## WALTER E. HELLER & COMPANY
## *v.* KOCHER

[No. 441, September Term, 1970.]

*Decided June 4, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Lloyd O. Whitehead,* with whom were *Perdue, Owrutsky & Whitehead* on the brief, for appellant.

No brief filed on behalf of appellee.

BARNES, J., delivered the opinion of the Court.

The two questions presented to us in this case are (1) whether the finding by the Circuit Court for Calvert

County (Bowen, J.) that the appellant, Walter E. Heller & Company (Heller), mortgagee of land sold at a tax sale, had actual notice of the pendency of the tax sale foreclosure proceeding was clearly erroneous and (2), in any event, did the failure of the purchaser at the tax sale to comply strictly with certain requirements in the applicable statutes and rules result in a constructive fraud upon Heller entitling it to set aside the deed given by the Treasurer of Calvert County to the purchaser at the tax sale?

The facts were stipulated in the lower court. On April 9, 1964, Heller conveyed to Colonel Gross, in fee simple, an improved parcel of land on Olivet State Road in the First Election District of Calvert County, containing approximately one acre of land (the subject property). This deed recites that Heller is a Delaware Corporation with its principal place of business in Chicago, Illinois. The deed was acknowledged in Cook County, Illinois by the vice president and secretary of Heller. This deed was duly recorded among the land records of Calvert County on June 23, 1964, immediately prior to the recordation of a deed of trust from Colonel Gross to Heller. On the deed of April 9 appears the following notation: "Orig. to Carolyn Potter Collection Dept. P. O. Box 9128, Tampa 4, Florida."

The Deed of Trust was dated April 10, 1964. It recited that Gross is indebted to Heller for $4,358.40 for which Gross on April 10, 1964, has executed a promissory note to Heller in that amount payable to the order of Heller, "Tampa, Florida, on or before May 15, 1972 (8) years after date in equal monthly instalments" of $45.40 each with interest from maturity at 6% per annum. "Said note is payable at P.O. Box. No. 9128, Tampa, Florida, or at such other place as" Heller "its successors or assigns, may designate in writing from time to time." As indicated, the Deed of Trust of April 10 was recorded on June 23, 1964, immediately after the recordation of the deed of April 9.

The taxes on the subject property not having been paid, the Treasurer of Calvert County, as collector of taxes, sold the subject property at a tax sale to Frederick R. Kocher, Jr. for $400.00 of which only the amount of unpaid taxes of $178.40 was paid. A Calvert County Certificate of Sale, dated April 15, 1967, was issued to Mr. Kocher stating the facts in regard to the tax sale and that after April 16, 1968, a proceeding to foreclose all rights of redemption in the property must be brought within two years or the certificate would be void. It was further stated that the property was subject to redemption, upon which the holder would be refunded the amount paid on account of the purchase price with 6% interest, and that the balance of the purchase price and all taxes, with interest and penalties accruing after the date of sale, would have to be paid to the collector before a deed could be delivered to the purchaser.

On February 20, 1969, counsel for the tax sale purchaser, Kocher, wrote to the Maryland Department of Assessment and Taxation in regard to whether Heller was a Maryland Corporation or a foreign corporation authorized or registered to do business in Maryland.

The following day, February 21, Kocher filed a Bill of Complaint in the Circuit Court for Calvert County, No. 2607 Chancery, against Colonel Gross and Heller as well as all others claiming any interest in the subject property, to foreclose all rights of redemption in the subject property. In the caption of the Bill of Complaint the last known address of Colonel Gross, the owner, was stated to be Olivet, Maryland, 20666. Heller is described in the caption as "a Delaware Corporation" but no address was given. In the allegations of the Bill of Complaint the tax sale is described, the failure to redeem is stated, and the ownership by Colonel Gross is supported by reference to the deed of April 9, 1964, a certified copy of which was attached as an exhibit. It was also alleged that the land records of Calvert County indicated that the subject property was subject to the Deed of Trust of April 10,

1964, in the amount of $4,358.40 and the recordation reference was given. It was prayed that a subpoena be issued to Colonel Gross "whose last known address was listed on the tax rolls as Olivet" commanding him to answer the Bill of Complaint; that an Order of Publication be granted, directed to Gross and Heller, if living, or if dead, their respective unknown heirs, executors, administrators, devisees and assigns and all persons claiming any interest in the subject property commanding them to answer; that a final decree foreclosing all rights of redemption of the defendants in the subject property be issued; and, that the plaintiff have other and further relief.

Colonel Gross was duly served by the Sheriff on February ' , 1967.

The Order of Publication, in the form prayed for in the Bill of Complaint, was duly published in the *Calvert Independent,* Prince Frederick, on February 27, March 6, 13 and 20, 1969.

On February 29 counsel for Kocher had a letter from the Department of Assessment and Taxation advising that Heller was neither a Maryland corporation nor a foreign corporation qualified or registered to do business in Maryland.

Sometime between April 15 and 18, 1968, counsel for Kocher, having located a telephone number, 837-1888, in the Tower Building in Baltimore for "Walter E. Heller & Company," telephoned there and talked with a secretary, the only person available, explaining the pending equity proceeding to her. The secretary advised that she would give the messsage to her superior and have him call back in regard to the matter. There was, however, no return call.

Thereafter, on April 25, 1969, counsel for Kocher, wrote Heller at the Tower Building in Baltimore City. The letter contained the preliminary reference, "Re: Colonel Gross One Acre situate on Olivet State Road,

Calvert County, Md. Equity No. 2607," and then after "Dear Sirs" stated:

> "Please be advised that I have just learned an address for your Company, and as a matter of courtesy, I am forwarding to your office copies of all papers in re tax sale foreclosure with respect to above captioned party. As a matter of fact I called your office a week or ten days ago and tried to explain the matter to a secretary who was to call me back, but never did, that the subject property on which your company holds a mortgage was sold at tax sale and *in a few days* I am going to submit the matter for final decree for foreclosure of all rights of redemption.
>
> "I enclose herewith statement showing the amount necessary to redeem the property including 1968 taxes, which figure is good through April, 1969.
>
> "In the absence of any communications from you, I will assume you have no interest in the matter and will proceed to complete the tax sale foreclosure proceeding."

Copies of all of the papers filed in No. 2607 Chancery were enclosed together with a "Statement—Re Redemption" showing the details of the taxes, interest, expenses and costs, amounting in the total amount to $537.98, necessary to redeem the property.

Following the mailing of this letter to Heller, but prior to the decree *pro confesso* entered on May 26, 1969, counsel for Kocher had a telephone conversation or conversations with a person who identified himself as Charles Cohen, and who purportedly represented Heller, in regard to the proceeding and on May 21 forwarded to Mr. Cohen's office at his request a copy of the deed that conveyed the subject property to Colonel Gross.

None of the defendants having appeared or answered in No. 2607 Chancery, the plaintiff Kocher filed a petition on May 26, 1969, that the Bill of Complaint be taken

*pro confesso* and on the same day, a decree to this effect was passed by the circuit court.

On July 16, 1969, a final decree was entered in No. 2607 Chancery declaring that Kocher was "vested with an absolute and indefeasible title in fee simple" in the subject property, "free and clear of all alienation and descents of the property and encumbrances thereon prior to this Decree. . . ." The Treasurer of Calvert County, as Collector of taxes, was directed by the decree to execute a deed for the subject property to Kocher upon payment of the balance of the purchase price and all taxes, interest and penalties, if any, accruing after the date of sale. The Treasurer executed such a deed on July 18, 1969, which was duly recorded among the land records of Calvert County.

Heller, on April 22, 1970, filed a Bill of Complaint in the Circuit Court for Calvert County against Kocher (No. 2660, Chancery) alleging the prior proceedings in No. 2607 Chancery—the foreclosure of right of redemption suit—and that no bona fide attempt had been made in No. 2607 Chancery to serve Heller with a subpoena or of the Order of Publication. It was further alleged that no affidavit of any effort to locate Heller had been filed in No. 2607 Chancery as required by the Maryland Rules of Procedure and that the failure to comply with Rules 106 and 107 operated as a constructive fraud upon Heller, entitling it to have the decree in No. 2607 Chancery "set aside on grounds of constructive fraud." It was also alleged that the address of Heller could easily have been determined from the Calvert County Land Records on the face of the deed of April 10, 1964. It was prayed in the Bill of Complaint filed by Heller that the circuit court vacate and set aside so much of the decree of July 16, 1969, in No. 2607 Chancery as it pertains to Heller; set aside and annul the Treasurer's deed of July 18, 1969, to Kocher; that the circuit court set the figure necessary to enable Heller to redeem the subject property; and that Heller have other and further relief.

Kocher in his answer, in effect, set up the efforts, already mentioned, of counsel for Kocher to notify Heller of the pendency and subject matter of No. 2607 Chancery.

After a hearing—at which the aforegoing facts were stipulated, as we have heretofore stated—Judge Bowen, in an oral opinion, indicated that the proceeding being in *rem,* the circuit court had jurisdiction and that the principal issue before him was whether or not Heller had, in effect, been denied due process of law by the failure of Kocher to comply strictly with the provisions of the Maryland Rules already mentioned. He concluded that substantial compliance with the Rules had been accomplished by Kocher and that under the circumstances, Heller could not "be heard to say that [it] did not have actual notice of the [Equity] proceedings." He declined to find that there was a constructive fraud practiced upon Heller and indicated that he would sign a decree, when submitted, dismissing the Bill of Complaint and requiring Heller to pay the costs.

This final decree was signed by the lower court on November 13, 1970, from which a timely appeal to this Court was taken by Heller.

(1)

Heller contends that the lower court erred in concluding that it had actual notice of the redemption foreclosure proceedings, because it says, Kocher failed to comply with the provisions of Maryland Rules 106 and 107 in regard to the service of process on corporations and hence it "has had no actual notice by any person authorized to receive notice of suit of the pendency of the tax sale." In our opinion this rather begs the question. There is no doubt that Kocher did not comply with the provisions of Rules 106 and 107 in regard to service of process; but the obvious *purpose* of the provisions of these Rules is to provide for methods which will reasonably insure the ultimate reception by the corporation of

actual notice that an action has been filed against it. The forms and methods required by those Rules, in some situations, even if strictly complied with, do not guarantee or insure that *actual notice* will, in fact, be received by the corporation; their use does insure that the corporation will be afforded due process of law. When, however, a corporation has actual notice, *in fact,* of the pendency of the action, due process of law is obviously afforded and unless the defect in service is *jurisdictional,* the corporation cannot effectively complain that it has not been afforded due process.

In the present case, there was, in our opinion, sufficient evidence to support the finding that Heller had actual notice of the pendency and nature of No. 2607 Chancery, and most certainly, that finding was not clearly erroneous. Rule 886.

Counsel for Kocher located a Baltimore City telephone number listed in the telephone book for a corporation named Walter F. Heller & Company, the identical name with offices in the Tower Building. The secretary, the only person in the office at the time, answered the telephone, took down the information, promised to give it to her superior and to have that superior call counsel for Kocher. There was no protest on the secretary's part that the wrong corporation was being called, that there were other Heller Corporations of the same or similar names, that she had no authority to accept the call or to forward the information. On the contrary, the secretary *freely accepted the information,* offered to transmit it to her superior and arrange for a return telephone call. Still later, the telephone call not having been returned, counsel for Kocher then wrote a letter on April 25, 1969, addressed, as we have seen, to Heller in the Tower Building and enclosed copies of the pleadings in No. 2607 Chancery and a detailed statement of the amount necessary to redeem. This letter was never returned to counsel for Kocher. Still later, counsel for Kocher had a telephone conversation (or conversations) with a member of the

Maryland Bar who purported to represent Heller about the pending suit and on May 21, 1969 (prior to the passage of the decree *pro confesso*) forwarded to the attorney purporting to represent Heller a copy of the deed of April 10, 1964, by which the owner, Colonel Gross, acquired the subject property.

Then, too, Heller has never alleged nor attempted to prove that it *did not receive actual notice* of the pendency and effect of the redemption foreclosure suit. Its contention is that it never received actual knowledge from those persons mentioned in Rules 106 and 107. Under these circumstances, there was no error in the finding of the lower court that Heller had actual notice.

### (2)

In any event, however, says Heller, the lower court erred in concluding that the failure of Kocher to comply with Code (1969 Repl. Vol.), Art. 81, § 105 and Maryland Rules 106 and 107 operates as a constructive fraud on Heller and hence under Art. 81, § 113, which provides, *inter alia*, that the final foreclosure decree shall not be reopened "except on the ground of lack of jurisidiction or fraud in the conduct of the proceedings to foreclosure. . . ."

Heller relies on our decision in *Jannenga v. Johnson*, 243 Md. 1, 220 A. 2d 89 (1965) which held that, under the circumstances of that case, the failure of the plaintiff, in the redemption foreclosure case there involved, to comply with the provisions of Rule 105 and to make a good faith effort to supply the defendant property owner with such personal notice as would reasonably inform the property owner of the proceedings against the property involved, while not amounting to *actual fraud*, did amount to *constructive fraud* sufficient to justify under Art. 81, § 113, a reopening of the final decree foreclosing the rights of redemption. Judge Horney, in his concurring opinion in *Jannenga* was of the opinion that because the taxes on the property involved in that case had, in

fact, been paid by the property owner, the lower court lacked jurisdiction of the redemption foreclosure suit and thus the final decree could be reopened for this reason.

*Jannenga* is readily distinguishable from the present case. In *Jannenga* there was *no attempt* by the plaintiff to give the defendant nonresident property owner notice of the pendency of the suit, although the address of the nonresident owner was readily available on the tax records. The evidence showed that the property owner, in fact, received no notice of any kind until *after* the final decree was entered in the redemption foreclosure suit. In the present case, there was a good faith—and successful—effort by counsel for the plaintiff to give notice of the pendency of the suit and the lower court found, as a matter of fact, that the lien holder, Heller, had actual notice of the pendency of the suit.

In *Jannenga* we stated in the majority opinion:

> "Mrs. Jawitz [the property owner] makes no claim in this case of actual fraud in the conduct of the proceedings to set aside her equity of redemption. We hold, however, that before one may proceed by order of publication pursuant to section 107 of Article 81, he is required by that section to comply with the provisions of Maryland Rule 105 and to make a good faith effort to furnish the defendant with such personal notice as would reasonably inform him of the proceedings against his property. A failure to provide such notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud since Jannenga, regardless of moral guilt or intent to deceive, failed to perform a legal duty."

If Heller had been able to prove that it had not re-

ceived effective actual knowledge of the equity of redemption foreclosure proceeding because of the failure of the plaintiff to comply with Rules 106 and 107, notwithstanding the telephone calls and letters already mentioned, another issue might have been presented in the present case. This it did not do, however, and we express no opinion in regard to that possible issue.

> *Decree of November 13, 1970, affirmed, the appellant to pay the costs.*