MILES *v.* HAMILTON T/A DELTA REALTY

[No. 15, September Term, 1973.]

*Decided October 5, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*George E. Meng*, with whom were *Eugene E. Pitrof* and *Thomas L. Starkey* on the brief, for appellant.

*Paul E. Rosenberg*, with whom was *John M. Brennan* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here direct that a judgment be vacated because we are of the opinion that the trial court never acquired jurisdiction over the defendant, Daniel N. Miles (Miles), appellant here.

Appellee, C. Ricardo Hamilton, sued Miles, conceded to be a resident of Charles County, in the Circuit Court for Charles County. Pursuant to the provisions of Maryland Rule 116, a private process server was designated. He made a return of "non est." The summons was reissued and placed in the hands of another private process server. He made a return reflecting service upon Miles on October 26, 1972, at his home near Pisgah, Maryland.[1] When Miles failed to plead, Hamilton moved on November 29 for judgment by default. On December 7 judgment by default was entered against Miles with the provision "that the matter be set down for ex parte proof before any member of [that] Court." On the same day Miles filed a motion raising preliminary objection, claiming that he had not been personally served and that the court thus had no jurisdiction over him. A

---

1. We assume the private process server was over 21 years of age as required by Rule 116 a 1, a fact which does not appear in the record. The return here was made over three weeks subsequent to the time specified in Rule 116 c 1 for the return. The return fails to comply with the requirements of Rule 116 c 2. In fact, no affidavit was filed. The Bar would be well advised to note and follow Form 3 in the Appendix of Forms to the Maryland Rules. Rule 116 c 3 provides, however, "Failure to make proof of execution pursuant to this Rule shall not affect the validity of the execution."

hearing was held on that motion on January 12. On January 22, 1973, the trial judge filed a memorandum in which he said that he found "from the testimony given in the hearing . . . that under Article 75, Section 92 of the Maryland Code the summons was properly served." He then overruled the motion raising preliminary objection. On January 24 Miles moved to strike the judgment by default on the basis of lack of service. On January 31 a hearing was held on the motion to strike the judgment by default and on an oral motion to reconsider the motion raising preliminary objection. Both motions were denied. On February 15 an appeal was entered to this Court on behalf of Miles without specification as to the order from which the appeal was entered, which is a permissible procedure. The argument here is directed to both motions.

The private process server was called as a witness at the hearing on the motion raising preliminary objection. He stated that before he went to the home of Miles he questioned "a number of local people in the Pisgah area to find Mr. Miles' home." Before arriving at the Miles home he stopped at a general store and at the post office, seeking information about Miles. From those sources and from an individual, said to be a friend of Miles, who occupied a mobile home located approximately one-quarter mile from the Miles home he learned of the location of the Miles residence. He said that the gentleman in the mobile home not only directed him to the Miles home, but called the Miles home by telephone, presumably to advise of the process server's approach.

It was the testimony of the process server that when he arrived at the Miles residence a truck was in the back yard, a truck he claimed was owned by Miles. His information, he said, was that Miles lived alone.

The Miles home was surrounded by a barbed wire fence, approximately four feet high, with four strands of barbed wire on the fence posts. Testimony was that there were a number of signs in the area such as "No Trespassing,"

"Beware of the Dog," "No Parking," and "Keep Out." The house was described as "sitting approximately 30 to 40 yards away from the dirt road." The process server gained entrance to the Miles yard by stepping over the rope which was across the driveway entrance. At that time he said he observed two large dogs at the rear of the Miles home which "came around barking when [he] started to knock on Mr. Miles' door." He knocked "extensively," but received no answer. The process server went across the road and talked to a neighbor, and then returned to the Miles home. He said he "again got back past the two dogs and knocked extensively on the back door, which the curtain was pulled slightly back and [he could] see a small portion in the house." He claimed that "after knocking for approximately five to six minutes, [he] then left Mr. Miles' property and went back to [his] office." After a subsequent telephone call in which he said that he talked to Miles and Miles advised him that it was not he whom he wanted, but his son who had "gone to see the heart doctor," the process server returned to the Miles residence. He said he again knocked extensively at the front door, but received no answer. He then went to the back door where he "knocked extensively." He saw within the house a man whom he described as "elderly," being "around fifty-five to sixty." He asked him to open the door, but received no answer. Then, after, as he put it, "establishing that, that this was Mr. Miles, [he] placed the summons inside the sliding screen of the door at which Mr. Miles, if he were to come out, would have had to have seen and touch[ed] those papers." The process server then left.

At the hearing the process server said he saw Miles in the courtroom. He then proceeded to identify as Miles a man sitting on the front row in the courtroom. He said this was the man he saw at the Miles home on October 26. That man took the stand, identified himself as Bernard Craig of 25 P Street, N.E., Washington, D. C., said he knew Miles, and stated that on October 26, 1972, (the day on which the process server claimed to have served Miles at 11:50 a.m.) Miles arrived at his home in Washington between 9:30 and

10:00 a.m. and remained there until late in the afternoon. Miles apparently was not present at the hearing.

Code (1957) Art. 75, § 92, to which the trial judge alluded, provides in pertinent part:

"§ 92. Where service resisted by threats, violence or intimidation.

"In all cases of civil process . . . issued out of any court . . . lawfully to be served upon any person whatsoever, wherein the service of such . . . process upon such person then being within the local jurisdiction of such court . . . shall be prevented or resisted by threats, violence, intimidation or superior force on the part or behalf of such person; or when the said person so liable to be served with such . . . process shall be within any fortress, or fortified place or building, or at any military post within said jurisdiction, and entrance thereto, or access therein to such person shall be by order or on the behalf of such person refused, obstructed or prevented, so that the officer charged with the service of such . . . process shall be unable to serve the same, or cannot do so without force, or personal risk, the said officer shall leave a copy of such . . . process, if practicable or permitted, with such person or persons as shall present themselves, where such writ or process is sought to be served, and where or whereabout the person on whom the same is sought to be served shall be; or shall set up such copy upon the fortress, building or premises aforesaid, or as near thereto as may be practicable; *and shall make return of the facts accordingly;* which return shall to all legal intents, purposes and effect be equivalent to a return of actual personal service of such . . . process upon the party named therein." (Emphasis added.)

The return mentions no such facts, stating only:

"Daniel N. Miles, P. O. Box 117, Pisgah, Maryland was served in person on October 26, 1972 at 11:50 A.M. at his home in Pisgah, Maryland."

There are states where service by leaving a copy at one's residence or place of abode is regarded as sufficient to sustain a personal judgment against a resident of the state. *See* 62 Am. Jur. 2d *Process* § 99 (1972); 72 C.J.S. *Process* § 43 (1951); and Annot., *Service-Leaving Copy at Residence* 87 A.L.R.2d 1163 (1963). Our Rule 104 b requires service by "personal delivery" or registered mail. Provision for service upon one subject to process in Maryland other than by personal delivery or registered mail is made in Rule 104 h upon "affidavit that a defendant has acted to evade·service."

If Miles were not properly served, then the Circuit Court for Charles County had no jurisdiction and its judgment would be invalid and without significance. *Sheehy v. Sheehy*, 250 Md. 181, 184, 242 A. 2d 153 (1968); *Little v. Miller*, 220 Md. 309, 315, 153 A. 2d 271 (1959); *Harvey v. Slacum*, 181 Md. 206, 210, 29 A. 2d 276 (1942); and *Wilmer v. Epstein*, 116 Md. 140, 143, 81 A. 379 (1911). Moreover, in the absence of the voluntary appearance of the defendant, the fact that the defendant might have had actual knowledge of the suit against him would not cure a defective service. *Sheehy v. Sheehy, supra.*

As Judge Singley put it for the Court in *Ashe v. Spears*, 263 Md. 622, 284 A. 2d 207 (1971):

"The rule of our cases is that the return of service of process is presumed to be true and accurate and a mere denial by a defendant, unsupported by corroborative evidence or circumstances, is not enough to impeach the return of the official process server. [Citing cases.] This is because the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been

served, either for reasons of public policy or as a matter of probability, *Sarlouis v. Firemen's Insurance Co.*, 45 Md. 241, 244 (1876)." *Id.* at 627-28.

In this case personal service is rebutted by the process server himself when he took the stand to counter the Miles allegation that there had been no personal service. The trial judge did not rest his decision upon a conclusion on his part from the testimony that Miles had in fact been personally served, but upon the provisions of Art. 75, § 92. For that section to be applicable it would be necessary to find that (1) service had been "prevented or resisted by threats, violence, intimidation or superior force on the part or behalf of" Miles; (2) that Miles was "within [a] fortress, or fortified place or building, or at [a] military post within [Charles County]," with entrance thereto so obstructed or prevented that the process server "charged with the service of such writ or process [was] unable to serve the same"; or (3) that the process server could not serve process "without force or personal risk." There is not the slightest intimation in this case of any prevention of service or resistance of service "by threats, violence, intimidation or superior force." The Miles residence with its signs, four strands of barbed wire and barking dogs does not conform to our conception of the meaning of a "fortress, or fortified place or building, or ... military post," either today or at the time of the passage of § 92 by the General Assembly as Chapter 69 of the Acts of 1861. It is obvious that the presence of the dogs in the yard did not deter the process server from knocking extensively at front and back doors on not one, but two different days. Accordingly, it cannot be said that the process server was unable to serve the summons "without force, or personal risk." Therefore, the trial judge erred in concluding that service had been effected under § 92. There having been no valid service, it was entirely proper for Miles to move under Rule 625 to strike the judgment. This motion and the motion raising preliminary objection should have been granted.

It must not be supposed that appellee will be without remedies upon the remand in the event he again has difficulty in obtaining service of process upon Miles. If it

should appear that Miles "has acted to evade service," then upon affidavit to that effect under Rule 104 h provision is made for service by mailing a copy of the summons and the pleading to the defendant at his last known address and then delivering a copy of each "to a person of suitable age and discretion at the place of business, dwelling house or usual place of abode of the defendant within the State." Moreover, an attachment on original process under Rule G40 b probably would bring Miles into court in a hurry, since it is obvious from the nature of this litigation that he owns valuable real estate in Charles County.

> *Orders reversed and case remanded for further proceedings; costs to be paid by appellee.*