## MONCEF GUEN *v.* INGE GUEN

[No. 479, September Term, 1977.]

*Decided January 17, 1978.*

The cause was argued before THOMPSON, MOORE and COUCH, JJ.

*James K. Foley* for appellant.

*Jeffrey Hannon* for appellee.

COUCH, J., delivered the opinion of the Court.

This appeal stems from a decree of divorce *a vinculo matrimonii* (entitled Decree of Divorce Pro Confesso A Vinculo Matrimonii by the court below) granted to Inge Guen on December 13, 1976 by the Circuit Court for Montgomery County (Mitchell, J.). That decree dissolved the marriage between Inge Guen, appellee, and her husband, Moncef Guen; awarded custody of one minor child (Karim Guen) to appellee; and ordered the appellant to pay $60 per week child support, and $250 per week for the support and maintenance of the appellee. On December 17, 1976, Moncef Guen, who had not appeared in the divorce proceedings, filed a motion raising preliminary objection asking that the divorce decree be set aside on the ground of insufficiency of service of process. The Chancellor denied the motion, whereupon appellant filed a new motion to set aside, raising both jurisdictional and non-jurisdictional grounds. Appellant then took this appeal before the court below ruled on his new motion to set aside.

The issues presented in this appeal revolve around the sufficiency of the service of process under Md. Rule 107 (a)(4)(i).[1] Appellant maintains that service was not properly

---

1. Rule 107:
   "When the law of this State authorizes service of process outside this State as a basis for personal jurisdiction over persons outside this State the service may be made in the following manner:

   * * *

   4. When service is to be effected in a foreign country, it is sufficient if service of a copy of the summons, together with a copy of the

accomplished under this Rule, and as a result the trial court lacked jurisdiction to award the divorce, child custody, and support.

Appellee, in essence, contends that service was valid under Rule 107 (a)(4)(i) because that Rule requires only that the appellant have actual notice of the pending suit, and appellant here had actual notice. Appellee in this context maintains that strict compliance with the foreign law of service was not necessary.

Appellee also contends that by virtue of the appellant moving to set aside the decree of the Montgomery County Circuit Court, appellant "generally appeared" so as to waive his preliminary objection.

Appellant and appellee both briefly consider whether the court below had *in rem* jurisdiction. It is unclear whether the Chancellor proceeded on an *in rem* or *in personam* basis for jurisdiction. Rule 105 makes it clear that the acquisition of *in rem* jurisdiction is to be accomplished in the same manner as *in personam* jurisdiction. In light of our disposition of this case, we decline to consider whether the court below had *in rem* jurisdiction in this appeal.[2]

The facts leading to this appeal are relatively simple and undisputed. Moncef Guen, a Tunisian national, and Inge Guen, a German national, were married in London in 1958. According to evidence before the Domestic Relations Master, they resided in Montgomery County from 1968 until February 28, 1975. They owned, as tenants by the entireties, a residence at 6009 Bradley Boulevard, Bethesda, in Montgomery County. On February 28, 1975, appellant left the marital residence, returning in early May to remove one of the minor children, and left permanently to reside in Tunis, Tunisia.

---

original pleading, when reasonably calculated to give actual notice, is made:
(i) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction."

**2.** *See* Shaffer v. Heitner, 433 U.S 186, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977), in which the Supreme Court held that *in rem* jurisdiction must be judged by the minimum contacts analysis of International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). *See also* Maryland Rule 1085.

On May 13, 1976 appellee filed a bill of complaint for divorce *a vinculo matrimonii.* The circuit court issued a show cause order directing that the appellant show cause on June 21, 1976 why he should not be required to make reasonable child support and alimony *pendente lite.* On July 6, 1976, counsel for appellee filed a return of private process server, certifying that service of process on appellant was accomplished by sending the Bill of Complaint and Show Cause Order to the appellant at 31 Avenue de Paris, Tunis, Tunisia, by certified mail, restricted delivery, return receipt requested. On the same day counsel for appellee filed an affidavit "showing notice of proceedings" on the part of appellant. It alleged that counsel for appellee and appellee had received threatening communications from appellant, indicating that he had actual notice of the action. The return receipt was attached to the affidavit. The signature on the receipt did not appear to be that of the appellant.

Apparently appellant pursued his own divorce in Tunisia for he was granted a divorce on July 20, 1976 by a Tunisian court.

On December 13, 1976, pursuant to appellee's motion, the Chancellor ordered the sequestration of the residence at 6009 Bradley Boulevard. On the same day, the Chancellor set aside the Tunisian divorce obtained by appellant. More importantly, the Chancellor signed a decree of divorce pro confesso (*a vinculo matrimonii*) which, including dissolving the marriage, awarded custody of the minor child, Karim, to appellee, ordered the appellant to pay $60 per week child support, and $250 per week for support and maintenance of appellee. It was ordered that the sums to be paid for child support and alimony were to be paid from the equity owned by appellant in the sequestered property.

Four days later, appellant filed his motion raising preliminary objection and to set aside the decree. The only ground advanced was insufficiency of service of process. Appellant also filed an affidavit asserting that his signature did not appear on the return receipt. After a hearing on the motion, the Chancellor denied the motion on March 30, 1977.

On April 11, 1977, appellant filed a new motion to set aside the decree of divorce, raising various jurisdictional grounds, including the original ground of insufficiency of service of process that had been raised in his initial motion raising preliminary objection, and non-jurisdictional grounds, including that the appellee had testified falsely in the proceedings leading up to the decree of divorce.

Also on April 11, 1977, appellant filed a motion for written opinion pursuant to the Chancellor's denial of his motion raising preliminary objection.

On April 26, 1977, appellant filed an order for appeal to this Court. Though appellee filed a reply to appellant's second motion to set aside, that motion was never ruled on below. On June 22, 1977, the Chancellor filed his memorandum, explaining his grounds for denying appellant's motion raising preliminary objection.

In his written opinion the Chancellor held that although the signature on the return receipt did not appear to be appellant's signature, the appellant had been validly served under Md. Rule 107 (a)(4)(i). In so holding, the Chancellor relied on Art. 9 of the Tunisian Code of Civil and Commercial Procedure.[3]

Article 9 is, of course, the wrong provision of Tunisian law. Rule 107 (a)(4)(i) contemplates service as it would be accomplished *within* the foreign country where the defendant can be found. Article 9 applies to service by a Tunisian on a person *without* Tunisia. To this extent, the Chancellor erred.

Proper reliance should have been placed by the Chancellor on Articles 6 and 8 of the Tunisian Code, which provide for

---

3. Tunisian Code of Civil and Commercial Procedure:
   Art. 9:
   "If the person to whom the notice is to be served is not in Tunisia but his domicile in a foreign country is known, a copy of the notice shall be posted at the board reserved for official postings located in the court of the plaintiff. Another copy is sent by registered mail, along with a return of acknowledgment receipt, to the person to whom the notice is to be served."

service on a defendant *within* Tunisia.[4] The Chancellor made no findings as to the sufficiency of service under these articles. However, we believe it within our province to examine the record to determine if there is sufficient evidence of valid service under Articles 6 and 8, so as to prevent the time and expense of an additional appeal, if possible, as permitted by Md. Rule 1085.

Assuming, without deciding, that the return of service of process in this case was proper, and entitled to prima facie validity, the return could only be overcome by clear and convincing evidence of the invalidity of service. *J. Whitson Rogers v. Hanley,* 21 Md. App. 383, 319 A. 2d 833 (1974). That standard has been met beyond question in this case. The appellant in his affidavit asserted that he did not sign the return receipt, nor authorize anyone else to sign it. More importantly, as recognized by the trial court and the appellee, the return receipt does not bear appellant's signature. Thus no prima facie validity can be accorded to the return of service.

Further, the record is devoid of any evidence that service was properly made in accordance with Articles 6 and 8. There is no evidence of personal service on appellant. There is no evidence that appellant could not be found at his domicile, so as to allow service on a member of his household. There is no evidence that the notice was left with appellant's representative, servant, or member of his household who had the capacity of discernment. There is no evidence that no one could be found at the domicile of the appellant, or that

---

4. Art. 6:

"A copy of the notice shall be delivered to the person to whom the notice is to be served, or it has to be left at his real domicile, or if need be, at his elected domicile."

Art. 8:

"If the process-server cannot find in his domicile the person to whom the notice is to be served, he shall then leave a copy of the notice with his representative or with his servant or with any member of his household who has the capacity of discernment. If no one is found at the domicile, or if the person to whom the notice is addressed refuses to accept the copy of the notice, then the process-server shall deliver the notice to the headman of the neighborhood, the sheik of the locality or the chief of the police of the district. . . ."

appellant refused to accept process, so as to allow service on the local sheik or headman.

There is, essentially, no evidence as to who was served, and under what circumstances, other than the process was mailed to a certain address in Tunis. Accordingly, there is no sufficient evidence on which a finding that service was properly made under Articles 6 and 8 could be predicated.

We must conclude that the formal requirements of Maryland Rule 107 (a)(4)(i) were not met.

Appellee argues that despite the failure to meet the formal requirements of Rule 107 (a)(4)(i), the record shows that appellant had actual notice of the Montgomery County divorce proceeding. Appellee contends that Rule 107 (a)(4) requires only actual notice on the part of a defendant. For this proposition appellee relies on certain language found in *Walter E. Heller & Co. v. Kocher,* 262 Md. 471, 278 A. 2d 301 (1971), to the effect:

> "[T]he obvious *purpose* of the provisions of these Rules [106 and 107] is to provide for methods which will reasonably insure the ultimate reception by the corporation of actual notice that an action has been filed against it. . . . When . . . a corporation has actual notice, *in fact,* of the pendency of the action, due process of law is obviously afforded . . . ."

262 Md. at 478, 278 A. 2d at 305. *Kocher* must be put in its proper context, however. That case involved only a *due process* attack on the service of process. As the Court of Appeals noted later in *Kocher:*

> "When, however, a corporation has actual notice, *in fact,* of the pendency of the action, due process of law is obviously afforded and unless the defect in service is *jurisdictional,* the corporation cannot effectively complain that it has not been afforded due process."

*Id.* at 479, 278 A. 2d at 305.

The language of Rule 107 (a)(4) itself indicates that more than the due process minimum is required by the Rule. The

phrase "when reasonably calculated to give actual notice" is the due process minimum requirement. But the Rule goes on to provide different formal alternatives for service, indicating that the Rule encompasses a jurisdictional prerequisite as well as a due process prerequisite.

In *J. Whitson Rogers v. Hanley,* 21 Md. App. 383, 319 A. 2d 833 (1974), this Court considered the same Rule (106) as was considered in *Kocher.* We held (speaking through then Chief Judge Orth) that the failure to comply with the formal requirements of Rule 106 was jurisdictional, and the defect was fatal to the jurisdiction of the lower court. We noted that:

> "[D]ue process is satisfied not only by personal service as such, but when there is adherence to the Maryland Rules with respect to service of process."

21 Md. App. at 392, 319 A. 2d at 838-39.[5]

The Court of Appeals has often held that defective service is jurisdictional, and that actual knowledge on the part of the defendant will not cure the jurisdictional defect. *Little v. Miller,* 220 Md. 309, 153 A. 2d 271 (1959); *Sheehy v. Sheehy,* 250 Md. 181, 242 A. 2d 153 (1968); *Miles v. Hamilton,* 269 Md. 708, 309 A. 2d 631 (1973).[6]

In light of these cases, we conclude that in Maryland the plaintiff must do more than satisfy the due process requirement identified in *Kocher.* The plaintiff must serve the defendant in accordance with the applicable rules, or the court will fail to acquire jurisdiction over the defendant. In this case the appellee, plaintiff below, failed to comply fully with the applicable rule, Md. Rule 107 (a)(4)(i). To that extent the court below did not acquire jurisdiction to order the decree of divorce or an *in personam* judgment for alimony and child

5. *See* Sanders v. Sanders, 12 Md. App. 441, 278 A. 2d 615 (1971), for a case where this Court, applying Kansas law, held that strict compliance was jurisdictional, in respect to a Williams v. North Carolina, 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207 (1942), divorce.

6. In Barrie-Peter Pan Schools v. Cudmore, 261 Md. 408, 276 A. 2d 74 (1971), the strict formalities of the appropriate statute were compiled with. This is inapposite to the instant case.

support. Therefore, the trial court erred in denying appellant's motion raising preliminary objection.[7]

Appellee attempts to rescue the decree of divorce, despite the defect in the service of process, through her contention that the appellant voluntarily appeared in the action by virtue of both his motions to set aside the decree, thereby waiving his preliminary objection.

The initial motion raising preliminary objection was not a voluntary appearance so as to waive service of process. In it, appellant asserted only the jurisdictional ground of insufficiency of service of process. Appellant complied with the only prerequisite to Md. Rule 323 — that the defect in service be raised before any other defense.

The Court of Appeals was confronted with a similar proposition in *Keen v. Keen,* 191 Md. 31, 60 A. 2d 200 (1949). There the trial court granted Pauline Keen a divorce after a decree pro confesso from Howard Keen, plus $500 per month alimony. One month later, Howard entered a special appearance in order to file an order of appeal. Thereafter Howard dismissed the appeal and filed a petition to set aside and to allow him to file an answer, based on several non-jurisdictional grounds. Two months later Howard moved to strike the decrees on the ground of insufficiency of service of process. Both the motion and prior petition were overruled, and Howard appealed.

The Court of Appeals held that due to the insufficiency of service of process, the decree should have been stricken. The Court noted:

> "[T]he validity of every judgment depends upon the jurisdiction of the court *before it is* rendered, not upon what may occur subsequently."

---

7. We are not to be understood to imply the court below could have acquired *in personam* jurisdiction through proper service, only that it did not. Whether there existed a basis for *in personam* jurisdiction was not raised below or on appeal, and in light of our disposition of this case, it is unnecessary for us to decide the question.

This reasoning is applicable to this case. Appellant quite properly asserted the service defect first, as required by the rules, precluding a finding of waiver of his objection to the decree. Thus, the decree had to be judged on the jurisdiction of the court as it existed *before* it was rendered, not upon the possibility that jurisdiction was voluntarily conferred *after* it was rendered. Given that service defect the decree cannot stand.

However, as in *Keen,* the fact that appellant did not waive his preliminary objection and that the decree is invalid, does not also mean that appellant did not enter a voluntary appearance so as to submit himself to the jurisdiction of the court in all *subsequent* proceedings. In *Keen,* despite striking the decree, the Court of Appeals went on to hold that by virtue of Howard's original order of appeal and his petition to set aside which set out meritorious defenses, Howard had voluntarily appeared. Thus he was bound in all subsequent proceedings, and was required to file an answer on the remand of that case. That is also the result in the instant case.

In his second motion to set aside, appellant raised at least one non-jurisdictional ground — that appellee had not represented the facts truthfully to the Chancellor. What appellant did, in effect, was to controvert the allegations made by appellee relevant to the placing of fault for the divorce. Appellant was speaking to the merits. As such, he made a voluntary appearance, submitting himself to the jurisdiction of the court for all subsequent proceedings.[8] *Keen v. Keen, supra* at 41-42, 60 A. 2d at 205, 206.

Accordingly, we vacate the orders and decrees of the trial court and remand this case with directions that appellant be permitted to file his answer and defenses within the applicable rule period, counting from the return of the mandate of this Court. The court below will have full

---

8. The voluntary appearance has two effects: it not only waives service of process, but supplies a valid basis for the acquisition of jurisdiction — consent. Keen v. Keen, supra; Killen v. American Casualty Co., 231 Md. 105, 189 A. 2d 103 (1963).

jurisdiction to hear this case and sign an appropriate decree, or, if appellant fails to file a responsive pleading, to enter a new decree pro confesso.

> *Orders reversed; decree and decree pro confesso stricken; case remanded for further proceedings.*
> *Costs to be paid by appellee.*