666 A.2d 899

LVI ENVIRONMENTAL SERVICES, INC. f/k/a
Diversified Environmental Corporation

v.

ACADEMY OF IRM.

No. 2063, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Nov. 2, 1995.

700

Joseph S. Kaufman (Schulman & Kaufman, L.L.C., Bruce L. Corriveau and Fedder and Garten, P.A., on the brief), Baltimore, for Appellant.

George Z. Petros (Nicholas J. Kallis, on the brief), Annapolis, for Appellee.

Argued before BLOOM and HOLLANDER, JJ., and ROSALYN B. BELL, Judge (retired), Specially Assigned.

ROSALYN B. BELL, Judge, Specially Assigned.

LVI Environmental Services, Inc. (LVI), appellant, appeals from a judgment of the Circuit Court for Anne Arundel County awarding Academy of IRM, appellee, $89,092.05 plus interest in a garnishment proceeding. LVI first moves to dismiss the proceedings for lack of personal jurisdiction. LVI also presents three questions for our review:

I. Was there a legal basis for Academy of IRM to garnish funds of LVI?

II. Was LVI a successor corporation liable for the debt of its predecessor?

III. Did the trial court abuse its discretion in allowing a witness to testify in rebuttal after the witness had been disqualified from testifying in Academy of IRM's case-in-chief?

## BACKGROUND

In July 1986, Diversified Environmental Group, Inc. ("DEG") filed Articles of Incorporation with the Commonwealth of Pennsylvania. DEG engaged in the business of asbestos removal and opened a branch office in Rockville, Maryland. DEG also occasionally operated under the trade name Desco Insulation Company (Desco). In September 1986, Desco entered into a contract with the Army Corps of Engineers for an asbestos abatement project at Fort Belvoir in Virginia. The contract was awarded on September 29, 1986, and the Army made its final payment on July 31, 1990. Desco contracted with Academy of IRM to provide work and

materials to Desco's Fort Belvoir project. From 1986 to early 1987 (the exact dates are not clear from the record before us), Academy of IRM provided said services and material, but Desco failed to pay all monies owed to Academy of IRM.

During this time, one of DEG's secured creditors, the Crouse Group, Inc. (Crouse), experienced financial difficulties and filed for bankruptcy protection. DEG was indebted to Crouse in an amount over five million dollars. Among other things, Crouse held security interests in DEG's equipment, machinery, and contracts, including the Fort Belvoir contract and proceeds due DEG from that contract. On June 10, 1987, Crouse and DEG entered into an agreement whereby DEG would buy back its debt from Crouse for $1,995,084.00 and all obligations and security interests would be deemed satisfied and cancelled. The agreement was never consummated.

Shortly thereafter, on June 25, 1987, LVI, a Delaware corporation, whose business was operating subsidiaries engaged in asbestos abatement contracting services, formed another subsidiary, which was incorporated in Pennsylvania and named Diversified Environmental Corporation ("DEC"). LVI was the sole stockholder of DEC. Mr. Larry Liss was listed as DEC's president and Mr. Paul Goldberg was listed as its secretary. These gentlemen were also two of the five owners of DEG and were DEG's president and secretary. On August 6, 1987, DEG and Crouse entered into an amended agreement wherein NICO, Inc., LVI's parent corporation, became the assignee of certain rights held by DEG arising out of the June 10 agreement.[1] NICO paid Crouse $1,995,084.00 for an assignment of guarantees and security interests from and in DEG. This assignment included the security interest Crouse held in the Fort Belvoir contract.

In September 1987, according to Mr. Burton Fried, who was then director and general counsel of LVI, DEG had no employees. DEC obtained an assignment of the leases to

---

1. NICO, also a Delaware corporation, is the parent company of subsidiaries operating in several states under the name LVI Environmental Services, Inc. All companies are involved in asbestos removal.

DEG's offices in Rockville and moved into those offices. On November 16, 1987, NICO and DEG, trade name Desco, entered into an "Agreement in Lieu of Public Sale," under which the parties agreed that, as DEG was in default, NICO would foreclose on the collateral, which included the Fort Belvoir contract. The next day, Academy of IRM filed an action in the Circuit Court for Anne Arundel County against Desco and DEG seeking payment for goods and services provided in the asbestos abatement project at Fort Belvoir. On November 18, 1987, DEG and NICO entered into another agreement: "Agreement for Private Foreclosure in lieu of Public Sale and Notice of Assignment." NICO foreclosed on the collateral, which included all equipment and inventory of DEG as well as contract rights, specifically, the Fort Belvoir contract.

On December 1, 1987, Desco, DEG, and LVI executed a "Bill of Sale, Assignment and Transfer of Rights." [2] Under this agreement, LVI assigned its rights to DEC. On January 6, 1988, DEC filed a notice of name change with the Commonwealth of Pennsylvania Department of State Corporation Bureau. DEC had changed its name to LVI Environmental Services, Inc. Mr. Paul Goldberg signed the forms required by Pennsylvania as DEC's secretary and Mr. Larry Liss signed as DEC's president.

LVI continued to perform under the Fort Belvoir contract. According to Mr. Daniel DeLuca, a contract specialist with the Army Corps of Engineers at Fort Belvoir, if there is an assignment of a contract, the Army requires a novation. The Army sent a letter to Desco explaining that, if the company changed names, a novation would be required. A reply, dated May 12, 1989, was received from Mr. Fried, general counsel and director of LVI, stating that the necessary information was being compiled, but no further action was taken on the novation. The Army made its last payment on the Fort Belvoir contract on July 31, 1990. Prior to March 1989, all

---

**2.** Although not entirely clear from the record, there appears to have been an assignment of rights by NICO to LVI.

checks issued by the Army Corps of Engineers were made payable to DEC/LVI. After March 1989, the checks were made payable to Desco.[3]

In addition, when DEC/LVI moved into DEG's offices in Rockville, it took over all of DEG's office space, office equipment, letterhead, telephone lines, and trucks. The employees, except for the branch manager, remained the same. There was a gradual transition, over a period of approximately three months, wherein the company changed from DEG to LVI. LVI obtained an employer identification number from the federal government, set up bank accounts, and received an assignment of two leases for locations previously occupied by DEG.

Every company engaged in the business of asbestos removal must obtain a license from the Maryland Department of the Environment. These licenses are not transferrable; two companies may not operate under the same license. When a company goes bankrupt, the license is retired. Desco had been issued license number M3900011 on June 10, 1986. DEC/LVI continued to operate under Desco's license. The license does reflect a name change from Desco to LVI. The Maryland Department of the Environment, Division of Asbestos Licensing and Enforcement, did not issue a new license to LVI, as it did not believe that the proof offered by LVI was sufficient to establish that it was, in fact, a new company. There is no record that LVI was ever informed of this decision.

On May 19, 1988, the Circuit Court for Anne Arundel County filed an Order of Default against Desco in favor of Academy of IRM. The circuit court limited the order to Desco, finding that the service of process as to DEG did not comply with the requirements of Maryland Rule 2–124(c). On May 23, the court mailed a Notice of Default to Desco. Three

---

3. Mr. Fried testified that this change resulted from a conversation that Academy of IRM's prior counsel had with the Army Corps of Engineers in which counsel advised the Army that it had no right to issue checks to DEC/LVI and that it should issue the checks to Desco.

months later, on August 16, 1988, the circuit court held a hearing on damages. Desco did not appear. The court entered a default judgment against Desco *and DEG* and in favor of Academy of IRM in the amount of $78,204.00 and $10,763.05 in pre-judgment interest.

On March 8, 1989, a Writ of Garnishment of Property was issued against DEC and LVI, the garnishees, in favor of Academy of IRM, the judgment creditor. Academy of IRM sought the funds paid out by the Army Corps of Engineers under the Fort Belvoir contract. In an answer filed with the circuit court on April 5, 1989, DEC and LVI denied having possession of any property of Desco or DEG, the judgment debtors.

The case finally came for a hearing before the Circuit Court for Anne Arundel County on September 19, 1994. The court found that LVI was a successor corporation of DEG liable for DEG's debts. The court entered a judgment in favor of Academy of IRM for $89,092.05 plus interest from August 16, 1988. It is from this judgment that LVI appeals.

## THE MOTION TO DISMISS

The Circuit Court for Anne Arundel County entered an Order of Default against Desco only, noting that service of process on DEG did not comply with Rule 2–124(c). Notice of default was sent to Desco. Subsequently, the court entered a default judgment against Desco *and DEG*. LVI claims that, because service of process was inadequate, the court did not gain jurisdiction over DEG. LVI, therefore, alleges that the court was without jurisdiction to enter a judgment against DEG. LVI also alleges that service upon Desco, alone, was not sufficient as Desco was merely a trade name. LVI asks this Court to remand the case back to the Circuit Court for Anne Arundel County with instructions to dismiss for lack of jurisdiction.

LVI, as garnishee, may assert any defenses that the judgment debtor, DEG, may have had. Maryland Rule 2–645(e) provides in pertinent part:

**(e) Answer of Garnishee.**—The garnishee shall file an answer within the time provided by Rule 2–321. The answer shall admit or deny that the garnishee is indebted to the judgment debtor or has possession of property of the judgment debtor and shall specify the amount and nature of any debt and describe any property. The garnishee may assert any defense that the garnishee may have to the garnishment, as well as any defense that the judgment debtor could assert.

If the service of process on DEG was defective, the Circuit Court for Anne Arundel County never obtained jurisdiction over DEG and DEG's actual knowledge of the action will not cure the jurisdictional defect. *Miles v. Hamilton,* 269 Md. 708, 713, 309 A.2d 631 (1973); *Sheehy v. Sheehy,* 250 Md. 181, 184–85, 242 A.2d 153 (1968); *Reed v. Sweeney,* 62 Md.App. 231, 237–38, 488 A.2d 1016, *cert. denied,* 303 Md. 471, 494 A.2d 939 (1985); *Guen v. Guen,* 38 Md.App. 578, 585, 381 A.2d 721 (1978). Accordingly, LVI could contend that the Circuit Court for Anne Arundel County did not obtain jurisdiction over DEG and, as a result, the default judgment entered against DEG is a nullity.

We proceed, assuming *arguendo,* that service of process solely on Desco, as a trade name, was not sufficient and that DEG was not properly served. Nevertheless, we hold that LVI has waived this defense.

Initially, we note that there is a dispute between LVI and Academy of IRM regarding the nature of LVI's Motion to Dismiss. LVI contends that the motion is an attack on the circuit court's lack of jurisdiction over DEG. Academy of IRM claims, *inter alia,* that LVI is attempting to reach the revisory power of the court under Rule 2–535 by demonstrating some "fraud, mistake, or irregularity." It is, in reality, a combination of the two positions. Failure of the circuit court to obtain jurisdiction over LVI would amount to an irregularity in the proceedings. *Ervin v. Beland,* 251 Md. 612, 618, 248 A.2d 336 (1968). *See also O'Connor v. Moten,* 307 Md. 644, 648, 516 A.2d 593 (1986) ("preliminary objection on the ground

of personal jurisdiction was, in effect, a motion to strike the default judgment").

■■ Maryland Rule 2–322(a) requires that certain preliminary motions be made before an answer is filed:

> **(a) Mandatory.**—The following defenses shall be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue, (3) insufficiency of process, and (4) insufficiency of service of process. If not so made and the answer is filed, these defenses are waived.

Once a party speaks to the merits of a case, the individual has made "a voluntary appearance, submitting himself to the jurisdiction of the court for all subsequent proceedings." *Guen,* 38 Md.App. at 587, 381 A.2d 721. "The voluntary appearance has two effects: it not only waives service of process, but supplies a valid basis for the acquisition of jurisdiction—consent." *Id.* at 587 n. 8, 381 A.2d 721. *See also O'Connor v. Moten,* 307 Md. 644, 648, 516 A.2d 593 (1986) ("by joining with his preliminary objection a motion to strike the default judgment because of the existence of meritorious defenses, [defendant] would have waived his objection to personal jurisdiction"); *McCormick v. St. Francis de Sales Church,* 219 Md. 422, 428–29, 149 A.2d 768 (1959) (party who filed motion to quash for improper service and, thus, for lack of jurisdiction that also included defenses on the merits held to have entered general appearance and submitted to jurisdiction of the court). "Rule 323 [now Rule 2–322] contemplates that no pleading (including a motion) shall be filed before a motion under that Rule." *McCormick,* 219 Md. at 428, 149 A.2d 768.

LVI addressed the merits of the case in its answer, filed on April 5, 1989, to the issuance of the Writ of Garnishment. There then ensued extensive discovery disputes between the parties. On October 29, 1990, the circuit court signed an order that stated in relevant part: "the scope of discovery against Plaintiff [Academy of IRM] may include inquires which may lead to admissible evidence that the procurement of the subject Default Judgment was obtained by 'fraud,

mistake, or irregularity.' " Almost four years later, a hearing was held on the Writ, at which LVI asserted meritorious defenses. The circuit court entered a judgment against LVI. At no time did LVI assert that the court lacked personal jurisdiction over DEG and that the default judgment was invalid. This question is raised for the first time in the appellate court. Consequently, we hold that LVI waived this defense and voluntarily submitted to the jurisdiction of the Circuit Court for Anne Arundel County.

## GARNISHMENT

■ LVI contends that there was no legal basis for Academy of IRM to garnish its funds, as the judgment debtor, DEG, had no right to bring an action against LVI for monies paid to it by the Army Corps of Engineers. We agree and reverse the judgment of the circuit court.

■ In *Fico, Inc. v. Ghingher*, 287 Md. 150, 411 A.2d 430 (1980), the Court of Appeals discussed the nature of a garnishment proceeding:

A garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor. An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover. The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole purpose of the garnishment proceeding therefore is to determine whether the garnishee has funds, property or credits which belong to the judgment debtor.

*Id.* at 159, 411 A.2d 430 (citations omitted). In a garnishment proceeding, the rights of the creditor cannot rise above the rights of the debtor. *Cocco v. Merchants Mortgage Co.*, 69 Md.App. 68, 72, 516 A.2d 596 (1986). "In a garnishment proceeding the test of the liability of the garnishee is whether he has funds, property or credits in his hands, the property of

the debtor, for which the debtor would have the right to sue."
*Id.* at 74, 516 A.2d 596.

In the present case, DEG/Desco, the judgment debtor, did
not have any right to sue LVI, the garnishee, for funds owed
to DEG/Desco. LVI, as a secured creditor, foreclosed on
DEG's assets. We can discern no theory, nor does Academy
of IRM refer us to one, through which DEG/Desco would have
a cause of action against LVI for the funds paid out by the
Army Corps of Engineers. Indeed, Academy of IRM's theory
was that DEG/Desco and LVI were, in reality, the same
entity, i.e., that LVI was a mere continuation of DEG/Desco.
Accordingly, Academy of IRM, as the judgment creditor, could
not garnish any funds of DEG/Desco that LVI had in its
possession.

Academy of IRM argues that LVI was liable as garnishee
because it is, allegedly, a successor corporation. Academy of
IRM further claims that it should be permitted to pursue this
theory of liability as LVI had notice that this was the theory
under which it was proceeding.

■ Academy of IRM is correct that the "debts and liabili-
ties of the predecessor corporation are imposed on the succes-
sor corporation when (1) there is an expressed or implied
assumption of liability; (2) the transaction amounts to a
consolidation or merger; (3) the purchasing corporation is a
mere continuation of the selling corporation; or (4) the trans-
action is entered into fraudulently to escape liability for
debts." *Baltimore Luggage Corp. v. Holtzman,* 80 Md.App.
282, 290, 562 A.2d 1286 (1989), *cert. denied,* 318 Md. 323, 568
A.2d 28 (1990). Academy of IRM, thus, had a direct cause of
action against LVI as the successor corporation of DEG/Des-
co. LVI, however, is not subject to garnishment by Academy
of IRM. Academy of IRM could not transform the garnish-
ment proceeding into a direct cause of action against LVI and
proceed on a theory of successor corporation liability. *Fischer
v. Longest,* 99 Md.App. 368, 380, 637 A.2d 517, *cert. denied,*
335 Md. 454, 644 A.2d 488 (1994); Maryland Rule 2–303(b)

(contents of pleading must "show the pleader's entitlement to relief").

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**