JARDINE, GILL & DUFFUS, INC. and
Amstar Corporation

v.

M/V CASSIOPEIA, her engines, boilers, etc. and F.A. EMMAMAR, S.A. and/or F.A. Emamar, S.A. and FLENSBURGER REEDEREI A.G. VON 1961.

Civ. A. No. M–78–1422.

United States District Court, D. Maryland.

Sept. 25, 1981.

John H. Skeen, Jr., David W. Skeen, James D. Skeen and Constable, Alexander, Daneker & Skeen, Baltimore, Md., for plaintiffs.

Robert H. Williams, Jr., Robert P. O'Brien and Niles, Barton & Wilmer, Baltimore, Md., for defendant F. A. Emmamar, S.A. and/or F. A. Emamar, S.A.

JAMES R. MILLER, Jr., District Judge.

### MEMORANDUM AND ORDER

The defendant, "F. A. Emmamar, S.A. and/or F. A. Emamar, S.A.," has moved, pursuant to Rule 60(b),[1] for an order vacating a default judgment entered against it on August 7, 1979.[2] A show cause order was issued to the plaintiffs, Jardine, Gill & Duffus, Inc., and Amstar Corporation, on June 5, 1981,[3] and the plaintiffs have filed an opposition to the defendant's motion.[4] The court heard argument by counsel on September 18, 1981, and this matter is now ready for disposition.

### I. BACKGROUND

On August 2, 1978, the plaintiffs filed a libel *in rem* against the M/V Cassiopeia,[5] and a libel *in personam* against the defendant and the charterer.[6] The defendant was alleged to be the owner of the vessel. The

1. Paper No. 11.
2. Paper No. 10.
3. Paper No. 12.
4. Paper No. 13.
5. The vessel was never arrested.
6. The claim against the charterer was dismissed due to its involvement in bankruptcy proceedings in Germany. Paper No. 9.

maritime claim asserted involved the alleged failure of the vessel to deliver, in good condition, a cargo of sugar to the port of Baltimore.

On August 4, 1978, the plaintiffs' attorney sent by registered mail, return receipt requested, two copies of the summons and complaint to the Maryland Department of Assessments and Taxation. The accompanying letter stated that the defendant was "a non-resident corporation doing business within the state but having no resident agent," and requested that the Department transmit the documents to the defendant "in the usual manner." [7] The address provided to the Department by the plaintiffs, "c/o Freshway Shipping Co., Ltd., 70 Kolokotroni Street, Piraeus, Greece," was that of the owner's agent.[8] Service of the summons and complaint was admitted by the Department, and an affidavit of service was filed on behalf of the plaintiffs.[9] On August 15, 1978, the Department, by registered mail, return receipt requested, sent a copy of the summons and complaint to the defendant at the address provided by the plaintiffs.[10] A signed, return receipt was received by the Department.[11]

No answer having been filed by the defendant, the plaintiffs moved for an entry of default on November 13, 1978, which was entered by the Clerk on November 14, 1978.[12] On November 15, 1978, the plaintiffs' attorney wrote to the defendant, at the same mailing address, advising that if no response was received by December 15, 1978, the plaintiffs would move for the entry of a default judgment.[13] On July 12, 1979, the plaintiffs did move for a default judgment, and such a judgment was entered on the court's docket on August 7, 1979.[14] On August 14, 1979, the plaintiffs' New York counsel wrote to the defendant, in care of its same agent in Piraeus, Greece, demanding payment of the judgment.[15] A reply from the defendant's agent, dated August 28, 1979, was received by the plaintiffs' New York counsel on September 5, 1979.[16]

In support of its Rule 60(b) motion, the defendant has submitted the affidavit of Petros Kontominas, its agent in Piraeus, Greece.[17] According to Mr. Kontominas, he is a director of the Freshway Shipping Co., Ltd., located at 70 Kolokotroni Street, Piraeus, Greece. Mr. Kontominas states that all mail for Freshway Shipping Co., Ltd., is placed on his desk, and that he never received the registered letter sent by the Department. Mr. Kontominas also states that the signature on the return receipt card "appears to be" that of a man named Fotis Alifragis. Mr. Alifragis manages a company known as Freshway Travel, which like Freshway Shipping Co., Ltd. is located at Kolokotroni Street, Piraeus, Greece. According to Mr. Kontominas, although Mr. Alifragis and Freshway Travel are located in the same building as Freshway Shipping Co., Ltd., neither has any connection with, nor is authorized to sign documents on behalf of, the shipping company.

Mr. Kontominas admits in his affidavit that he received the August 1979 letter from the plaintiffs' New York counsel at the Kolokotroni Street address. Claiming to be unaware of the lawsuit in this District, Mr. Kontominas states that he forwarded the letter and its contents to his insurer in Norway. The defendant does not state in its moving papers when or by what

---

7. Paper No. 13, Ex. 1; Paper No. 5.

8. Freshway Shipping Co., Ltd., is the vessel owner's agent. Affidavit of Petros Kontominas, Paper No. 11, Ex. 1 at 2.

9. Paper No. 3; Paper No. 13, Ex. 3A.

10. Paper No. 13, Ex. 3A. *See* text accompanying note 19 *infra.*

11. Paper No. 13, Ex. 3.

12. Paper No. 6.

13. Paper No. 11, Ex. 6.

14. Paper Nos. 8 and 10.

15. A signed, return receipt was received by the plaintiffs' New York counsel. Paper No. 13, Exs. 9 and 10.

16. Paper No. 13, Ex. 11.

17. Paper No. 11, Ex. 1.

means it ultimately received notice of this action.

In a letter to the plaintiffs' Maryland counsel, dated November 9, 1978, the Department stated that the summons and complaint were sent to the defendant, on August 15, 1978, by registered mail, as follows:

"F. A. Emmamar S.A., c/o Freshway Shipping Co., Ltd., 70 Kolokotroni Street, Piraeus, Greece." [18]

The return receipt card, which bears a signature, states as follows:

"F. A. Emmamar S.A., and/or F.A. Emamar S.A. c/o Freeway Shipping Co., Ltd., Piraeus, Greece." [19]

The defendant has not submitted any evidence indicating that the address listed on the front of the letter that was sent by the Department did not list Freshway Shipping Co., Ltd., as the addressee, and there is no evidence to that effect in the record. Further, no evidence has been submitted as to whether the addressee listed on the return receipt card was inserted by the Department, the United States Postal Service, or some other person or entity.

## II.  DISCUSSION

The defendant does not identify the particular clause of Rule 60(b) that it relies upon as the basis of its motion to vacate the default judgment. However, given that the defendant has alleged that the court lacked personal jurisdiction, it is proper to treat the instant motion under Rule 60(b)(4), which authorizes relief from void judgments. *See, e. g., Compton v. Alton Steamship Co., Inc.,* 608 F.2d 96, 106 n. 19 (4th Cir. 1979), *quoting V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 224–25 (10th Cir. 1979);

*In Re Penco Corp.,* 465 F.2d 693, 694 n. 1 (4th Cir. 1972). Although Rule 60(b) appears to require all motions under that rule to be made "within a reasonable time," "this limitation does not apply to a motion under clause (4) attacking a judgment as void." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2866 at 228 (1973). *See V.T.A., Inc. v. Airco, Inc.,* 597 F.2d at 224; *Austin v. Smith,* 312 F.2d 337, 343 (D.C.Cir.1962); *Marquette Corp. v. Priester,* 234 F.Supp. 799, 802 (E.D.S.C.1964). Accordingly, the court must address the merits of the defendant's motion.

It is important at the outset to note what issues are not raised by the defendant's motion. The defendant has not claimed that the court lacked subject matter jurisdiction, or that the defendant had insufficient contacts with Maryland to warrant this court exercising personal jurisdiction through appropriate service of process.[20] The sole issue raised in the defendant's motion concerns the sufficiency of the service of process.

Although the defendant bases its argument on its alleged failure actually to receive a copy of the summons and complaint, that fact alone, even if true, is not determinative of the sufficiency of process question. Since process was served pursuant to Maryland statutes and rules,[21] the court's inquiry is two-fold: (1) whether the service conformed with the relevant Maryland statutes and rules; and (2) if so, whether such service afforded the defendant due process of law.

If the service attempted upon the defendant did not comply with the applicable Maryland statutes and rules, it was without

---

**18.**  Paper No. 13, Ex. 3A.

**19.**  Paper No. 5, Ex. 3;  Paper No. 13, Ex. 3.

**20.**  Assuming the truth of the complaint's factual allegations, it appears that the defendant's conduct regarding the shipment of sugar to the port of Baltimore falls within the "transacting business" prong of the Maryland long arm statute. *Md.Cts. & Jud.Proc.Code Ann.* § 6–103(b)(1).

**21.**  The plaintiff was directed by the Clerk to serve process in accordance with Rule 107, Maryland Rules of Procedure. Paper No. 2. Both Rule 4(d)(7) and Rule 4(e) authorize service on a non-resident corporation pursuant to the law of the forum state. As long as the state practice is followed properly, it makes no practical difference which federal rule was relied on by the plaintiff. 4 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1114, 1115 (1969).

effect and the court did not acquire personal jurisdiction over the defendant. *See, e. g., Parish v. Md. & Va. Milk Producers Ass'n, Inc.*, 437 F.Supp. 623, 625 n. 2 (D.Md. 1977) (improper service by registered mail on individual under Maryland Rule 107(a)(2)); *Miles v. Hamilton*, 269 Md. 708, 713, 309 A.2d 631 (1973) (improper personal service on individual under Maryland Rule 104(b)); *Sheehy v. Sheehy*, 250 Md. 181, 185–86, 242 A.2d 153 (1968) (same); *Guen v. Guen*, 38 Md.App. 578, 584–86 (1978) (improper service on individual in foreign country under Maryland Rule 107(a)(4)); *Steed Mortgage Co. v. Arthur*, 37 Md.App. 592, 599–604 (1977) (improper service on domestic corporation under Maryland Rule 106(b)(2) and (3)).

The plaintiffs were instructed by the Clerk to serve the defendant in accordance with Maryland Rule 107. *See* note 21 *supra.* That rule provides, in pertinent part:

"a. *Manner of Service—Generally.*

When the law of this State authorizes service of process outside this State as a basis for personal jurisdiction over persons outside this State, the service may be made in the following manner:

\*  \*  \*  \*  \*  \*

2. *Registered Mail.*

In lieu of personal delivery, a copy of the summons, together with a copy of the original pleading, may be served by registered mail, endorsed 'Restricted Delivery—Return Receipt Requested.' *If the defendant is a corporation, service shall be effected by sending a copy of the summons, together with a copy of the original pleading, by registered mail, to one of the persons in the order specified in section b. of Rule 106 (Service of Process—Corporation).* Upon return through the post office of the return receipt, an affidavit shall be filed with the clerk showing the circumstances warranting such service and (i) that the aforesaid copies were mailed to the defendant, and (ii) that they were in fact received by the defendant as evidenced by his signature on the original return receipt which shall be attached to the affidavit. The affida-

vit shall be prima facie evidence of service of process."
(emphasis supplied).

Maryland Rule 106 provides, in pertinent part:

"a. *Definitions—Corporation—Foreign Corporation.*

As used in this Rule, 'corporation of this State' means a corporation, association or joint stock company formed or existing under the statute or common law of this State. 'Foreign corporation' means a corporation, association or joint stock company formed or existing under the statute or common law of any State, other than this State, or any territory, district, possession or foreign country or the United States. The word 'corporation' used without qualification includes both a corporation of this State and a foreign corporation.

b. *Upon Whom Made.*

Service of process upon a corporation may be made as follows:

1. Resident Agent or President, Secretary or Treasurer.

Process may be served upon a resident agent or upon the president, secretary, or treasurer thereof.

2. Manager, Director, Vice-President, Assistant Secretary or Assistant Treasurer.

If a corporation (1) has not a resident agent, or (2) has one or more resident agents, and an unsuccessful attempt has been made to serve process upon each of such agents, process may be served upon the manager, any director, vice-president, assistant secretary or assistant treasurer thereof.

3. *Other Person Authorized.*

If none of the above, or the president, secretary or treasurer resides or can be found in the State, process may be served upon any other person expressly or impliedly authorized to accept such service.

\*  \*  \*  \*  \*  \*

e. *On State Department of Assessments and Taxation.*

1. If No Resident Agent or Unsuccessful Attempt to Serve.

*If a corporation required (by statute of this State) to have a resident agent, (i) has not a resident agent, or (ii) has one or more resident agents, and unsuccessful attempts have been made on different business days to serve process either twice upon one resident agent or one upon each of two resident agents, process may be served upon the State Department of Assessments and Taxation.*

2. *How Made.*

Service of process upon the State Department of Assessments and Taxation shall be made by serving two copies of the process, with the fee required by law, in the office of the Department upon the Director or a person designated by him for that purpose. The fee shall be taxable as costs in the case."

(emphasis supplied).

■ The defendant does not contend it had a resident agent in Maryland, or that it was not required by a Maryland statute to have such an agent in Maryland. *Md. Corp. & Assn's Code Ann.* §§ 7–104, 7–202 (1975). For the purposes of this motion, the court assumes that the defendant was doing interstate business in Maryland. By doing interstate business in Maryland, the defendant has consented to be bound by the laws of this State, *Md. Corp. & Assn's Code Ann.* § 7–105, including the service of process provisions of Maryland Rule 106. *Id.* § 1–401(b). Accordingly, it was proper for the plaintiffs to have served the Department of Assessments and Taxation. Maryland Rule 106(b)(3) & (e)(1). It is also apparent that service was properly made upon the Department, pursuant to Maryland Rule 106(e)(2), and that the appropriate affidavit and return receipt attesting to that service were duly filed. Maryland Rule 107(a)(2)(i) & (ii). Consequently, the court concludes that the plaintiffs complied fully with their obligations under the relevant Maryland statutes and rules relating to service on a foreign corporation.

The next issue concerns the duties of the Department under the substituted service provision. *Md.Cts. & Jud.Proc.Code Ann.* § 6–307 provides:

"When process is served on the Department of Assessments and Taxation in accordance with the Maryland Rules or the Maryland District Rules, the Director shall record the date and time of the service, and shall forward a copy of the process and notice of the service to the defendant at his mailing address, if known, or to his principal place of business."

■ Assuming for the moment, that in order for the instant service to be valid the Department had to fulfill its statutory duties, it appears that they have been carried out in this case. The evidence of record supports a *prima facie* finding that the registered letter itself was properly addressed. Except for the designation of "Freeway Shipping Co., Ltd." as the addressee on the return receipt card, rather than "Freshway Shipping Co., Ltd.," the defendant has produced no evidence to controvert this finding. As the party moving to overturn the judgment, it is incumbent upon the defendant to establish, through competent evidence, its right to relief. *See Compton v. Alton Steamship Co.,* 608 F.2d at 102; *Universal Film Exchanges, Inc. v. Lust,* 479 F.2d 573, 576 (4th Cir. 1973). In light of the evidence of record, the court concludes that the defendant has failed to demonstrate that the service of process in this case was not made in accordance with the relevant Maryland statutes and rules.

■ The next issue for decision is whether, under the service provisions used in this case, it is necessary, under Maryland law, that the defendant or its agent actually receive the summons and complaint. The court has found no case addressing substituted service on a foreign corporation under Rule 106(e)(1). In *Barrie-Peter Pan Schools, Inc. v. Cudmore,* 261 Md. 408, 276 A.2d 74 (1971), however, the Court of Appeals of Maryland did address substituted service on a domestic corporation under Rule 106(e)(1). In that case, the Sheriff had twice returned *non est* summons for the defendant corporation. After a third *non est* summons the plaintiff directed service, pursuant to Rule 106(e), to the Mary-

land Department of Assessments and Taxation. Pursuant to the mandate of *Md.Code Ann.* art. 75, § 75B, subsequently codified as *Md.Cts. & Jud.Proc.Code Ann.* § 6–307, the Department forwarded a copy of the summons and complaint, by certified mail, to the defendant corporation's resident agent. Although the name of the agent was "Mrs. Frances Seldin," the letter was addressed to "Mr. Francis Seldin." The letter was returned to the Department marked "unclaimed" by the United States Postal Service. A default judgment was entered against the defendant corporation, and one of its bank accounts was attached.

In moving to set aside the default judgment, the defendant corporation contended that the judgment was void because it was "without actual notice of the suit." 261 Md. at 412, 276 A.2d 74. In affirming the circuit court's refusal to vacate the judgment, the Court of Appeals held that since the service provisions of the rules had been complied with, the substituted service was proper and, therefore, sufficient for the court to acquire personal jurisdiction over the defendant corporation, notwithstanding that the defendant never received actual notice of the suit. The court reasoned that since the defendant corporation was required by statute to have a resident agent, and that the agent could not be found, it was appropriate for the plaintiff to serve the Department of Assessments and Taxation. 261 Md. at 412–20, 276 A.2d 74. Although the Court did not squarely address the issue of whether service would have been valid had the Department not forwarded process to the defendant's registered agent, the substituted service involved in *Barrie* was held sufficient because the Department was charged with a duty to take steps to notify the defendant corporation. Consequently, due process was not offended because the notice provisions of the statutes and rules were reasonably calculated to alert the defendant corporation to the pendency of the action. 261 Md. at 420–21, 276 A.2d 74, *citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See generally Walter E. Heller &*

*Co. v. Kocher*, 262 Md. 471, 478–79, 278 A.2d 301 (1971) (purpose of Rules 106 and 107 is to provide methods which will reasonably insure that a corporation receives actual notice; the rules do not guarantee that actual notice will be received by the corporation).

The defendant attempts to distinguish *Barrie* on the ground that the statute construed in that case, *Md. Code Ann.* art. 75, § 75B, established a conclusive presumption that the corporation had designated the Department as its agent to receive service of process, when service could not be made on the corporation's resident agent. According to the defendant, since the presumption was not carried over when that statute was codified as *Md.Cts. & Jud.Proc.Code Ann.* § 6–307, the reasoning of *Barrie* is inapplicable to this case. The court disagrees.

Assuming that the existence of a statutory presumption, regarding the agency of the Department, was central to the court's decision in *Barrie*, such a presumption still exists under Maryland law. *Md.Corp. & Assn's Code Ann.* § 1–401(b) provides:

"(b) *Service of notice on corporation under Rule 106.*

(1) Any notice required by law to be served by personal service on a resident agent or other agent or officer of any Maryland corporation or of any foreign corporation required by statute to have a resident agent in this State may be served on the corporation in the manner provided by Maryland Rule 106 or Maryland District Rule 106 relating to the service of process on corporations.

(2) *Service under Maryland Rule 106* or Maryland District Rule 106 *is equivalent to personal service on a resident agent*, or other agent or officer of a corporation mentioned in paragraph (1) of this subsection."

(emphasis supplied).

As the Revisor's Note indicates, this subsection now refers to Maryland Rule 106, rather than to *Md.Cts. & Jud.Proc.Code Ann.* § 6–307, formerly *Md.Code Ann.* art. 75, § 75B, because the new code provision

"only prescribes the actions to be taken by the Department when process is served on it," whereas "Rule 106 covers service of process on a corporation." Revisor's Note, *Md.Corp. & Assn's Code Ann.* § 1–401, at 26 (1975).

Applying the reasoning of the Court of Appeals in *Barrie*, to the facts of this case, the court concludes that the alleged failure of the defendant's agent actually to receive a copy of the summons and complaint does not, under Maryland law, invalidate the service of process or undermine the court's exercise of personal jurisdiction over the defendant.

■ The final question to be addressed is whether the alleged failure of the defendant's agent to receive actual notice of the suit operated to deny the defendant due process of law. Counsel have not referred to, and the court has not found, any federal decisions addressing the substituted service provisions at issue in this case. Of course, the *Barrie* decision suggests that the Court of Appeals of Maryland, if presented with this case, would hold the substituted service used herein constitutional as applied. Several decisions construing substituted service on corporate defendants under *Md.Code Ann.* art. 75, § 75B, however, provide some guidance on the constitutional question.

In *Speir v. Robert C. Herd & Co.*, 189 F.Supp. 432 (D.Md.1960), Judge Thomsen rejected a challenge to the constitutionality of *Md.Code Ann.* art. 75, § 75B. In that case the defendant corporation, which had received actual notice of the suit from the Department, contended that the substituted service provisions of the statute were unconstitutional because there was no requirement that the Department secure and file with the court a return receipt. Relying on *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), Judge Thomsen held the substituted service constitutional as applied in that case, reasoning that the statute afforded a form of notice reasonably calculated to inform the defendant of the suit, and that the State may legitimately require foreign corporations, which have failed to appoint a resident agent, to check with the Department regarding the pendency of any suits against them. 189 F.Supp. at 434–36. Judge Thomsen also noted:

"The question whether the form of service provided for by the statute is reasonably calculated to bring notice of the suit to the foreign corporation should be decided on the basis of normal circumstances. The fact that the notice was promptly sent and received in this case is not controlling."

189 F.Supp. at 435 n.1. *Accord, Maryland National Bank v. Shaffer Stores Co.*, 240 F.Supp. 777, 786 (D.Md.1965) (Watkins, J.).

In *Gkiafis v. Steamship Yiosonas*, 342 F.2d 546 (4th Cir. 1965), personal jurisdiction over one of the respondent shipowners was obtained by serving the Department of Assessments and Taxation. Although the court's opinion does not so indicate, it appears that this respondent received actual notice of the suit for it appeared specially and moved to quash service. The respondent raised the same constitutional objection that was advanced in *Speir*, and the Fourth Circuit rejected that challenge for the reasons stated in Judge Thomsen's opinion. 342 F.2d at 558.

As in the cases discussed above, the court need not address the issue of whether substituted service would violate the Due Process Clause had the Department not fulfilled its statutory notification duties. In this case, it is apparent that such duties were carried out, and that the summons and complaint actually reached the business address of the defendant's agent in Greece. That the defendant's agent did not actually receive the Department's registered letter does not, standing alone, render the substituted service used in this case unconstitutional. The defendant was required by statute to have in this State an agent to receive service of process. Failing to meet its statutory obligations, the defendant cannot reasonably complain of the plaintiff's use of statutorily authorized substituted service that is reasonably calculated to in-

form a foreign corporation of the pendency of a suit filed against it in the forum state. Accordingly, the court concludes that personal jurisdiction was acquired over the defendant, and that the default judgment entered against it is not void for lack of personal jurisdiction.

In its reply to the plaintiffs' memorandum in opposition, the defendant, for the first time, raised two additional grounds for relief: (1) that the default judgment was improperly entered by the Clerk, under Rule 55(b)(1), because the plaintiffs' claim was not for a sum certain; and (2) that the plaintiffs suffered no actual damage due to the variance between the cargo's bill of lading weight and its outturn weight. Again, the defendant has failed to indicate those subsections of Rule 60(b) that might entitle it to relief.

■ In the default judgment context, Rule 55(c) makes it clear that the requirements of Rule 60(b) must be satisfied before relief will be granted. *See, e. g., Broglie v. Mackay-Smith*, 75 F.R.D. 739, 742 (W.D.Va.1977); 6 *Moore's Federal Practice* ¶ 55.10[1] (2d ed. 1976); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2694 (1973). In addition to satisfying Rule 60(b)'s criteria, the moving party must also show that he has acted with reasonable promptness and has a meritorious defense to the claim as to which a default judgment was entered. *See, e. g., Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252–53 (4th Cir. 1974); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251–52 (4th Cir. 1967); 10 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2697–98 (1975). Further, the court must consider whether the non-moving party will be prejudiced by a reopening of the case. *E. g.*, 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2696 (1973).

Rule 60(b)(1) is unavailable to the defendant because the motion to vacate the default judgment was not filed within one year of the judgment's entry. Rule 60(b)(4), which comprehends no time limitations, may be applicable to the first contention raised in the defendant's reply memorandum. That is, the damage aspect of the judgment must be vacated because: (1) it was entered by the Clerk, and (2) the plaintiffs' claim was not for a sum certain.

The defendant correctly notes that a marine surveyor's damage estimate in a cargo loss case does not turn the cargo owner's claim into one for a "sum certain or for a sum which can by computation be made certain." Rule 55(b)(1). *See, e. g., Insurance Company of North America v. S/S Hellenic Challenger*, 88 F.R.D. 545, 548–49 (S.D.N.Y.1980); *Ace Grain Co., Inc. v. American Eagle Fire Insurance Co.*, 11 F.R.D. 364, 365–66 (S.D.N.Y.1951). It appears, however, that the plaintiffs' motion for the entry of judgment was addressed to the court, pursuant to Rule 55(b)(2), rather than to the Clerk, pursuant to Rule 55(b)(1).[22] The plaintiffs' judgment motion reads as follows:

> "*Plaintiffs move the court to enter default judgment* in favor of plaintiffs against defendant, F. A. Emarmar, and/or F. A. Emmamar, S.A., for $19,701.75 plus interest thereon at 6 percent per annum, from July 30, 1977 to July 15, 1979 of $2,314.95 making a total of $22,016.70 on the ground that default has been entered against said defendant for failure to answer or otherwise defend as to the Complaint of the plaintiffs, a copy of which is attached hereto as Exhibit A. The certificate of the Clerk of this Court is attached hereto as Exhibit B. The Affidavit of John Robert Benjamin, marine surveyor, as to damages sustained by plaintiffs is attached hereto as Exhibit C."

Paper No. 8 (emphasis supplied).

■ The default judgment itself, although on a form prepared by the Clerk, is signed by the court. Further, the judgment order was enrolled by the Clerk only after it

---

22. It is also undisputed that prior to moving for a default judgment, the plaintiffs sent notice to the defendant's agent of their intent to do so.

was signed by the court.[23] In light of these undisputed facts, the defendant's conclusory allegation that the default judgment was entered by the Clerk, rather than by the court, is insufficient to overcome the *prima facie* showing of regularity indicated by the record. Moreover, it cannot be doubted that the District Judge had the authority to enter the default judgment. *See* 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2685 (1973). The court concludes, therefore, that this aspect of the default judgment is not void, or otherwise improper, and provides no basis for relief.

■ The defendant's final contentions, regarding the plaintiffs' damage recovery based on bill of lading weight, rather than on outturn weight, might be cognizable under Rule 60(b)(6). That rule authorizes the court to set aside a judgment for any "reason justifying relief from the operation of the judgment." Such a motion need only be made "within a reasonable time." It should be noted, however, that while Rule 60(b)(6) "vests power in the courts to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 1099 (1949), "clause (6) and the first five clauses are mutually exclusive," and "relief cannot be had under clause (6) if it would have been available under the earlier clauses." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2864 at 217 (1973). *See, e. g., Ackermann v. United States*, 340 U.S. 193, 199–202, 71 S.Ct. 209, 212–13, 95 L.Ed. 207 (1950); *Compton v. Alton Steamship Co.*, 608 F.2d at 107; *Transit Casualty Co. v. Security Trust Co.*, 441 F.2d 788, 792 (5th Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971); *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 86 F.R.D. 131, 136–37 (E.D.Va.1980). Further, relief is generally unavailable under Rule 60(b)(6) when the moving party has failed to take legal steps to protect his interests, such as the prosecution of an appeal. *See, e. g., Polites v. United States*,

364 U.S. 426, 432–33, 81 S.Ct. 202, 206, 5 L.Ed.2d 173 (1960); *Ackermann v. United States*, 340 U.S. at 198, 71 S.Ct. at 211, 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2864 at 214–15 (1973).

The default judgment was entered in this case on August 7, 1979. Although the defendant's agent in Greece admits having had actual notice of the judgment in the fall of 1979, the defendant did not move under Rule 60(b) until May 28, 1981. Moreover, the defendant's contentions regarding its allegedly meritorious defenses were not raised until its reply memorandum of July 15, 1981. Finally, the basis of the defendant's alleged defense to the plaintiffs' bill of lading weight damage claim has been known to the defendant since August of 1977.

It appears, therefore, that the defendant has not moved with reasonable diligence in seeking to set aside the default judgment entered against it in this case.

In any event, the defendant is not entitled to relief because it has failed to demonstrate a factual basis for its asserted meritorious defenses. The defendant contends that one of the plaintiffs, Amstar Corporation (Amstar), pays for its sugar on an outturn basis. That is, the original contract price for the sugar allegedly is adjusted to reflect any variance between the bill of lading weight and the outturn weight. According to the defendant, therefore, Amstar suffered no actual injury from the variance between the sugar cargo's bill of lading weight and its outturn weight. The defendant also asserts: (1) that since it was not involved in determining the cargo's loading weight it is not responsible for any variance; and (2) that the charterer is responsible for any loss due to the variance, because the charterer deducted the value of the variance from the charter hire. In support of these defenses, the defendant has submitted: (1) the report of its own marine surveyor, stating that Amstar pays only for sugar actually received; and (2) an affida-

---

**23.** The plaintiffs' counsel who filed the default judgment motion states, in the plaintiffs' reply, that they intended the motion to be acted on by the court. Paper No. 15.

vit of the defendant's counsel regarding the deduction from the charter hire.[24]

It is apparent, for several reasons, that the defendant has failed to make a sufficient showing of a meritorious defense to warrant the extraordinary relief contemplated by Rule 60(b)(6). First, the plaintiffs' counsel represented at the hearing that plaintiff Jardine, Gill & Duffus, Inc., was the shipper of the cargo, and that it incurred an actual loss due to the weight variance. When questioned by the court, counsel for the defendant could offer no evidence to controvert this representation.

Second, the defendant has offered no competent evidence regarding what Amstar's actual payment basis was in this case, much less that Amstar suffered no actual injury. Again, counsel for the plaintiffs represented to the court that Amstar did suffer actual damage due to the cargo's weight variance.

Third, the defendant's contentions regarding the alleged responsibility of the charterer, and its own lack of responsibility for the accuracy of the bill of lading, are wholly speculative. The defendant has not attempted to enter the bill of lading, or any other document, into the record. Further, the defendant has offered no evidence to rebut the presumption established by section 3(4) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1303(4). Under that subsection of the COGSA, an ocean bill of lading is *prima facie* evidence of the carrier's receipt of the goods in the quantity and condition stated on the face of the document. The defendant has not even suggested which, if any, of the COGSA's provisions it relies on to rebut section 3(4)'s presumption. In sum, since the defendant has not carried its burden of demonstrating a defense to the merits of the plaintiffs' claim, there is no basis for granting it relief from the default judgment under Rule 60(b)(6).

For the reasons set out above, it is this 25th day of September, 1981, by the United States District Court for the District of Maryland, ORDERED:

The defendant's motion for relief from judgment, pursuant to Rule 60(b), Fed.R. Civ.P., is DENIED.