DAVIDSON TRANSFER AND STORAGE COMPANY
ET AL. *v.* CHRISTIAN ET AL.
(Two Appeals in One Record)
[No. 112, October Term, 1950.]

*Decided March 16, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Ward B. Coe, Jr.,* and *LeRoy W. Preston,* with whom were *Weinberg & Green* and *Anderson & Barnes* on the brief, for the appellants.

*Talbot W. Banks,* with whom were *Clark, Thomsen & Smith* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Delores M. Reeves, as widow of Robert M. Reeves under Lord Campbell's Act, Code, art. 67, § 1 et seq., and as his administratrix and in her individual capacity filed in the Baltimore City Court three suits, docketed as one case, against Christy Oehm, The Davidson Transfer and Storage Company, and James A. Christian and George O. Christian, individually and as copartners trading as Christian Brothers. She alleged in substance that she was injured and her husband was killed in a traffic accident in Baltimore County; that she and her husband were passengers in an automobile driven by Oehm which was in collision with a tractor-trailer "owned, controlled, leased and operated" by the Christians and Davidson; that the accident was caused by the negligence of all the defendants. The Christians appeared specially and moved to quash the writ of summons on the ground that they did not reside in Baltimore City or "carry on any regular business or habitually engage in any avocation or employment" there. The plaintiffs' answer denied this allegation, and testimony was taken upon that issue. The appeal is by Davidson and Oehm, the co-defendants, from an order of court granting the motion and entering a judgment of non pros in favor of the Christians. Although the plaintiff did not appeal, the right of the co-defendants to do so is not challenged. *Koester Bakery Co. v. Poller,* 187 Md. 324, 326, 50 A. 2d 234. It is conceded that the appeal is not premature. *State, to use of Bickel v. Pennsylvania Steel Co.,* 123 Md. 212, 91 A. 136. Cf. *Northwest National Ins. Co. v. Rosoff,* 195 Md. 421, 433, 73 A. 2d 461, 466.

The testimony shows that the two Christians reside in Baltimore County and own two tractor-trailers, which they keep at home and personally drive, hauling freight in interstate commerce under trip-lease agreements with common carriers. Their entire business consists in interstate hauling from the Baltimore metropolitan area to New York and other points. Christian Brothers average about three trips a week. 60% of their work was for Davidson, amounting to about two trips a week. They were working with Davidson "steadily all along". The other 40% of their work was for other trucking companies, most of whom were located in Baltimore City. Most of the loads were picked up at the Bethlehem Steel Company plant at Sparrows Point in Baltimore County. They had such a load on board when the accident occurred. About 25% of the time, or "once or twice a week", the loads were picked up in Baltimore City. Most of their business was solicited by telephone calls from their home, or by personal visits with their equipment to the various carriers' terminals in Baltimore City. About 20% of the time the carriers telephoned the Christians at their home.

On the day before the accident James Christian came to the Davidson terminal in Baltimore City with his tractor-trailer, and inquired if there was a load for him. He was told that there was, and a lease was thereupon prepared and executed providing for the leasing of the equipment, with driver, for one trip from Baltimore to New York, the lessor to provide insurance coverage. In this instance, as in all others, the lessee inspected Christian's registration and insurance cards and the equipment, and affixed to the truck the Interstate Commerce Commission "sticker". Christian went to Sparrows Point, where he received a load of steel products. He took this load to his home where he spent the night. The accident occurred in Baltimore County the next day, after he had started for New York.

The controlling statute is Code (1947 Supp.), Article 75, section 157, which provides in part: "No person

shall be sued out of the county in which he resides * * * provided * * * that any person who resides in one county but carries on any regular business, or habitually engages in any avocation or employment in another county, may be sued in either county * * *. As used in this section the term 'county' includes 'Baltimore City' ".

This statute has been construed by this court in a number of cases, none of which is precisely in point. In *Chappell v. Lacey,* 1893, 77 Md. 172, 26 A. 499, 500, it was held that "any regular business" need not be the principal business. In *Gemundt v. Shipley,* 98 Md. 657, 57 A. 12, it was held that a nonresident defendant who came to Baltimore only to look after personal investments was not doing business there. In *Cromwell v. Willis & Homer,* 96 Md. 260, 53 A. 1116, the defendant resided in Baltimore County but served, without salary, as president of a commercial corporation located in Baltimore City and doing business there. It was held that he was amenable to process in Baltimore City. On the other hand, in *National Bank of Baltimore v. Steele,* 143 Md. 484, 122 A. 633, it was held that an attorney, resident and practicing in Carroll County, was not amenable to process in Baltimore City, although he held a part-time federal office there, requiring his presence two or three days a week. The court seems to have construed the statute as not covering employment in public office.

The appellee relies strongly upon *M. J. Grove Lime Co. v. Wolfenden,* 171 Md. 299, 188 A. 794. In that case it was held that a corporation, engaged in the manufacture and sale of lime products in Frederick County, was not amenable to suit in Baltimore City, although it had an agent there who solicited business on a commission basis and forwarded orders for acceptance at the plant. It also submitted bids from time to time to the State Roads Commission and the municipal authorities, for orders to be filled from its Frederick County plant. We think the case is distinguishable.

It is generally held that the mere solicitation of orders does not constitute doing business, even where followed

by the delivery of goods, unless, indeed, there are further duties assumed by the vendor in connection with the goods after delivery. In the instant case the activities of the appellees went far beyond solicitation. Not only were the trip-lease agreements almost invariably executed in Baltimore City, but it was essential that the leased equipment be brought there for inspection and the affixing of the I.C.C. "sticker" or licenses plates. Davidson held a federal permit or certificate to operate its vehicles over the route; Christian Brothers had none. Under the federal statute, U.S.C.A. title 49, § 301, et seq., a record of the transaction was required, and the lessee assumed certain statutory duties. "The traffic handled in such leased equipment by an owner-operator becomes an integral part and parcel of the authorized carrier's operations. * * * and as to the operations of such leased vehicle the lessee carrier assumes full responsibility for compliance with all applicable statutes and rules of the Commission governing the duties of the carrier to the shipper and to the public generally." *I.C.C. v. F. & F. Truck Leasing Co.*, D. C., 78 F. Supp. 13, 19. See also *Brown v. L. H. Bottoms Truck Lines*, 227 N. C. 299, 42 S. E. 2d 71; *Venuto v. Robinson*, 3 Cir., 118 F. 2d 679; *Costello v. Smith*, 179 F. 2d 715 (U. S. C. A. 2nd); *Cf. Garfield v. Smith*, 317 Mass. 674, 59 N. E. 2d 287. Whether Christian Brothers were independent contractors or agents, which we need not decide, we think they were employed, within the meaning of the venue statute, in Baltimore City. It is clear that such employment was in the regular course of the only business transacted by the appellees. A substantial part of the shipments originated in Baltimore City. Under the circumstances, we think the court erred in quashing the summons and entering a judgment of *non pros.*

*Judgment reversed, with costs, and case remanded.*