# BARBARA MOORING *v.* LILLIAN C. KAUFMAN

[No. 141, September Term, 1982.]

*Decided October 14, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Marc J. Atas* and *Harold P. Dwin,* with whom were *Cohen, Dwin & Garfield, P.A.* on the brief, for appellant.

*Robert L. Simmons,* with whom were *C. Russell Fields, George W. Fanshaw, III, Simmons & Fields* and *Andrew Lioi* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

Substituted service of original process was attempted in this case pursuant to Maryland Rule 107 a 3. The writ of summons was quashed and the Plaintiff appeals from that order. We shall hold that the order in this case is an appealable final judgment. We shall also affirm because the record shows that, at the time of the attempted service, the premises at which substituted service was undertaken were not the "dwelling house or usual place of abode" of the Defendant, as required by MD. R. 107 a 3.

Appellant, Barbara Ann Mooring (Plaintiff), by a declaration filed in the Eighth Judicial Circuit on April 9, 1980, averred that she had been injured on October 14, 1979 in an

automobile collision that occurred on a parking lot and involved a vehicle operated by her and one alleged to have been owned and negligently operated by the Appellee, Lillian C. Kaufman (Defendant). Service of process was directed to be made at 25 Maple Court, Elkton, Cecil County, Maryland, an address later described in an affidavit of Plaintiff's counsel as the one "listed on the accident report." On April 12, 1980 the writ was returned *non est* by the Cecil County Sheriff who reported that the Defendant had "moved to 1715 28th St.[,] Orlando, Florida." Suit papers sent by certified mail to that address under MD. R. 107 a 2 were returned by the postal service on July 18, 1980 with the notation, "Moved." Inquiry by letter to the U.S. Post Office in Orlando developed a record of a change of address from 1715 28th Street to 527 "Nowell," Orlando, Florida 32811. Papers sent to the latter address for service by certified mail were returned on September 18, 1980 with the notation that the addressee had moved and had left no forwarding address.

The foregoing facts were presented to the court below in an affidavit of Plaintiff's counsel to support an order authorizing substituted service pursuant to MD. R. 107 a 3 which deals with service of process to be made outside of the State of Maryland by other than personal delivery or registered mail, when a defendant has acted to evade service of process.[1] That rule incorporates the manner of service provided in MD. R. 104 h 1 which provides:

---

1. MD. R. 107 a 3 reads:

a. *Manner of Service — Generally.*

When the law of this State authorizes service of process outside this State as a basis for personal jurisdiction over persons outside this State, the service may be made in the following manner:

. . . .

3. Service Other Than Personal Delivery or Registered Mail.

When a defendant has acted to evade service of process, and proof is made thereof by affidavit stating also the circumstances warranting service outside the State, the court may order that service outside the State be made in the same manner as provided in subsection 1 of Rule 104 h for service within the State. Service may be made by an individual permitted to make service under Rule 104 h 2 and proof of service shall be made in the same manner and with the same effect as provided for in Rule 104 h 3.

h. *Service Other Than Personal Delivery or Registered Mail.*

### 1. When Allowed — How Made.

Service other than by personal delivery or registered mail, upon a domiciliary or resident or one who maintains his principal place of business in this State, may be made under the following circumstances:

When proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the summons together with a copy of the original pleading to the defendant at his last known residence and delivering a copy of each to a person of suitable age and discretion at the place of business, dwelling house or usual place of abode of the defendant within the State.

The order requested by the Plaintiff was entered on November 7, 1980, and we shall assume, *arguendo,* that the facts set forth in the supporting affidavit were sufficient to find that the Defendant had acted to evade service. In compliance with the further procedural step of "mailing . . . to the defendant at his last known residence," the suit papers were sent by ordinary mail, postmarked November 10, 1980, to the Defendant at the "Nowell" address. That mailing was returned marked "moved, left no address."

To comply with the requirement of "delivering . . . to a person of suitable age and discretion at the . . . dwelling house or usual place of abode of the defendant," Plaintiff employed a private process server in Orlando, whose affidavits reflect the following. She was engaged around April of 1981 to serve the Defendant at 527 "Noel." At what she believed was that address there were two houses on a single lot, one in front and one to the rear. When she first attempted service there, no one was home at the house in

front, and she obtained the name and address of the landlord from a Ms. "Vicky" Nance at the rear house. Ms. Nance was "not sure about a Lillian Kaufman." The process server then spoke with the landlord, Mrs. Charles Howard, who lived nearby. The affidavit describes their conversation:

> Ms. Howard did state that Ms. Lillian Kaufman had been a tenant, but not any longer. She stated that she did not know where Ms. Kaufman went when she left. She stated Ms. Kaufman mentioned to her when they had spoken previously that she (Ms. Kaufman) had lived in Maryland and one day may go back there, or mentioned something about the state of Michigan.

The process server then returned to the "Noel" premises and served Ms. Vicki Nance.

At some point Plaintiff's counsel had established communications with the liability insurer of the Defendant. After proof of service by delivery to Ms. Nance was filed on April 14, 1981, counsel for the insurer, on behalf of the Defendant, filed a motion raising preliminary objection which, among other grounds, relied upon an affidavit by Ms. Nance that she resided at 525 "Nowell." This precipitated a second effort by Plaintiff at substituted service in Florida. The same process server reinterviewed Mrs. Howard who explained that 527 "Noel" had formerly been her home, that the dwelling to the rear was a converted former garage, and that the two buildings have separate post office addresses. She advised that the person then residing in the house on the front of the lot was a Larry Nixon. The process server went to 527 "Noel" where a female who identified herself as Jeanette Nixon, the wife of Larry Nixon, answered the door. In the words of the process server's affidavit,

> Jeanette Nixon then accepted the papers and was very cooperative. She stated she hopes she does not get into trouble, but would accept and would hold onto the papers since she was not sure what to do with them.

The circuit court ordered the service of process quashed, and we granted certiorari on our own motion prior to consideration of the Plaintiff's appeal by the Court of Special Appeals.

(1)

The first issue is the Defendant's contention that there is no appealable judgment. In essence the Defendant's insurer says that the action remains pending in the court below and may go forward whenever the Plaintiff locates the Defendant and effects service. However, "this Court has consistently entertained appeals from orders quashing writs of summons and the returns thereon, when the result of the rulings of the lower Court was to put the parties out of Court." *Sharpless Separator Co. v. Brilhart,* 129 Md. 82, 88, 98 A. 484, 487 (1916). The "accepted test in determining finality" is whether "[t]he effect of the court's ruling was to put the plaintiff out of court and deny her the means of further prosecuting her case . . . ." *McCormick v. St. Francis De Sales Church,* 219 Md. 422, 426-27, 149 A.2d 768, 771 (1959) (appeal from order granting motion *ne recipiatur* to declaration). In *Hunt v. Tague,* 205 Md. 369, 109 A.2d 80 (1954) service on the defendant, by delivering the writ to the defendant's wife, was quashed because the defendant died before the attempt at service. This order effectively put the plaintiff out of court and was appealable. There was but one defendant named in the suit so that the plaintiff could not amend to substitute the decedent's personal representative (*see* MD. R. 320 b 1), and the institution of a new action was barred by limitations. Of similar effect is *State ex rel. Bickel v. Pennsylvania Steel Co.,* 123 Md. 212, 91 A. 136 (1914). Jurisdiction over a foreign corporation, allegedly doing business in Maryland, was sought to be obtained by serving a Maryland corporation as agent of the defendant. That service was quashed. This was an appealable order because the trial court determined that the foreign corporation was not doing business in Maryland and that the local entity was not its agent. Consequently, the plaintiff had no means of

obtaining jurisdiction over the defendant, under the law as it stood at that time, and the plaintiff was effectively out of court. *See also Hillyard Construction Co. v. Lynch,* 256 Md. 375, 379 n.1, 260 A.2d 316, 318 n.1 (1970) (dicta statement that an appeal will lie from an order quashing service of summons); *Davidson Transfer & Storage Co. v. Christian,* 197 Md. 392, 79 A.2d 541 (1951) (appeal from the quashing of a writ of summons for want of venue is not premature). There are also many cases in which this Court has entertained appeals from determinations that the plaintiff had failed to acquire *in personam* jurisdiction over a nonresident defendant and in which appealability was implicitly recognized. *See Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551 (1977) (dismissal of declaration on MD. R. 323 motion); *Geelhoed v. Jensen,* 277 Md. 220, 352 A.2d 818 (1976) (same); *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 260 A.2d 22 (1969) (same); *Vitro Electronics v. Milgray Electronics, Inc.,* 255 Md. 498, 258 A.2d 749 (1969) (same); *Novack v. National Hot Rod Ass'n,* 247 Md. 350, 231 A.2d 22 (1967) (quashing writ of summons); *Gilliam v. Moog Industries, Inc.,* 239 Md. 107, 210 A.2d 390 (1965) (quashing writ of summons; judgment for defendant for costs); *White v. Caterpillar Tractor Co.,* 235 Md. 368, 201 A.2d 856 (1964) (MD. R. 124 c dismissal and quashing of writ of summons); *Chesapeake Supply & Equipment Co. v. Manitowoc Engineering Corp.,* 232 Md. 555, 194 A.2d 624 (1963) (quashing writs of summons and entry of *non pros*); *Feldman v. Thew Shovel Co.,* 214 Md. 387, 135 A.2d 428 (1957) (quashing writ of summons and entry of *non pros*); *Grote v. Rogers,* 158 Md. 685, 149 A. 547 (1930) (quashing return of process). The earlier of these cases are tacit applications of the rule expressly articulated in *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 517, 43 S. Ct. 170, 171, 67 L. Ed. 372, 375 (1923) that an order, "although in form an order to quash the summons and not a dismissal of the suit, is a final judgment . . . ."

Defendant's insurer points to the dismissal of the appeal noted from the granting of a motion to quash in *Oland v.*

*Agricultural Insurance Co.,* 69 Md. 248, 14 A. 669 (1888). Service in that case was attempted on a foreign insurance company, doing business in Maryland, by service on X, its general agent, as permitted by the corporation statutes. However, a provision of the insurance statutes required foreign insurers doing business in Maryland to designate by power of attorney an agent for the service of process, and this provision was held to be exclusive. In compliance with the insurance statutes, the defendant had designated Y. Because Y was available to be served in Maryland, the quashing of service on X did not effectively put the plaintiff out of court. Here, the only alternative to the substituted service on which the Plaintiff relies is service on the Defendant personally. But the trail which the Plaintiff has been following has run out and the whereabouts of the Defendant are *presently unknown to the Plaintiff.*[2] Under these facts the quashing of the service effectively puts the Plaintiff out of court. Although the Plaintiff's suit remains open on the docket, subject to the operation of MD. Rule 530, there is a final judgment for purposes of appealability.

(2)

With regard to the merits of this appeal, the issue of whether the Plaintiff delivered suit papers at the "dwelling house or usual place of abode" of the Defendant within the meaning of MD. Rules 107 a 3 and 104 h 1 is dispositive. These rules were adopted in their present form on March 28, 1966, effective June 1, 1966, pursuant to the recommendations contained in the Twenty-Seventh Report of the Standing Committee on Rules. Former Md. R. 104 was

---

**2.** The record does not disclose the source from which the Cecil County Sheriff obtained the first Florida address for the Defendant. We are not informed as to the age, marital status, or occupation, if any, of the Defendant. Nor does the record show whether the Defendant has any remaining ties, through family or friends, to the Elkton address. However, the record does reflect that in December of 1981 the insurer wrote to the Defendant at 527 "Nowell," Orlando, Florida and that its letter was returned marked "addressee unknown." Presumably the address used by the insurer was the best address which it had for its insured. This is additional support for concluding that the Plaintiff is unable to proceed further with the action.

revised, and a new rule, present MD. R. 107, was created in order to give practical application to the long arm statute enacted by Chapter 95 of the Acts of 1964. The Rules Committee Report points out that

> [i]n these cases, service of process does not perform the function of "giving" the court its basis for jurisdiction. The purpose of service of process is to give the defendant fair notice of the action against him and the resulting fair opportunity to be heard. The notice should be such as is most likely to reach the defendant. It could be either inside or outside the State. [Report, *supra,* at 3.]

Work papers of the Rules Committee's subcommittee reflect that the "dwelling house or usual place of abode" language was derived from Fed. R. Civ. P. 4 (d) (1) and from § 308 of the New York Civil Practice Law and Rules which had been enacted in 1962 (CPLR 308). Fed. R. Civ. P. 4 (d) (1) has in relevant part remained unchanged and provides that service shall be made

> [u]pon an individual ... by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his *dwelling house or usual place of abode* with some person of suitable age and discretion then residing therein .... [Emphasis added.]

Wright and Miller state that

> [d]espite the length of time these words [italicized above] have been a part of federal practice, the decisions do not make clear precisely what they mean and the facts of a particular case often prove to be crucial. The majority of cases interpreting the words in the context of determining the validity of service appear to have focused on their literal meaning. [4 C. Wright and A. Miller, *Federal Practice and Procedure* § 1096, at 363-64 (1969).]

Those authors suggest "that the actual receipt of the summons and complaint at the particular place where it is served may be the real key to the disposition of many cases." *Id.* at 366. (Footnote omitted.) A decision supporting the proposition that "the provisions of Rule 4 (d) (1) should be liberally construed to effectuate service and uphold the jurisdiction of the court" is *Karlsson v. Rabinowitz,* 318 F.2d 666, 668 (4th Cir. 1963), *rev'g,* 31 F.R.D. 234 (D. Md. 1962). There suit papers were served on the defendant's wife at the home which they had jointly occupied in Maryland. However, the family was in the process of moving to Arizona. The defendant had already given up his residence in Maryland and was living in a motel in Arizona while the new family residence in that state was being constructed. Because the defendant had no intent to return to Maryland the District Court quashed service. Emphasizing that the defendant received actual knowledge of the suit, the Fourth Circuit reversed.

None of the various meanings of "dwelling house or usual place of abode" in Fed. R. Civ. P. 4 (d) (1) can be applied to the facts of the case at bar. At the time suit papers for the Defendant were delivered to Ms. Nixon, the house at 527 "Nowell" was not, in a literal sense, the dwelling house or place of abode of the Defendant. Nor is there any evidence that she intended to return there, and the delivery to Ms. Nixon did not succeed in effecting actual notice to the Defendant.

A further distinction between Fed. R. Civ. P. 4 (d) (1) and MD. R. 107 a 3 lies in the fact that the federal rule is a method of personal service, alternative to personal delivery to the defendant, while the Maryland rule is a form of substituted service which is permitted when the court is satisfied that the defendant has acted to evade service of process. MD. R. 107 a 3. As a form of substituted service MD. R. 107 a 3 is more analogous to its New York model than to its federal model. At the time of the adoption of MD. R. 107, N.Y. Civ. Prac. Law § 308 (McKinney 1963) provided:

Personal service upon a natural person shall be made:

1. by delivering the summons within the state to the person to be served; or

2. except in matrimonial actions, by delivering the summons within the state to the agent for service . . . or

3. where service under paragraph one cannot be made with due diligence, by mailing the summons to the person to be served at his last known residence and either affixing the summons to the door of his place of business, dwelling house or usual place of abode within the state or delivering the summons within the state to a person of suitable age and discretion at the place of business, dwelling house or usual place of abode of the person to be served . . . or

4. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraph one, two or three of this section.

Subsection 3 of the New York statute embraced two alternatives, known as " 'leave and mail' and 'nail and mail,' " [3] while MD. R. 107 a 3 incorporates only a leave and mail form of substituted service. Nevertheless, a "dwelling house or usual place of abode" was common to both of the alternatives in CPLR 308 (subs. 3) so that decisions dealing with either method are instructive in interpreting MD. R. 107 a 3.

Opinions of New York courts appear to be uniform in holding that substituted service must be made at a location which is *in fact* the place of business, dwelling house or usual place of abode of the defendant at the time service is attempted. For example, *Entwistle v. Stone,* 53 Misc. 2d 227, 278 N.Y.S.2d 19 (1967) dealt with a defendant who had moved from Fayetteville, New York to Oran, New York

---

3. Feinstein v. Bergner, 48 N.Y.2d 234, 240, 422 N.Y.S.2d 356, 358-59, 397 N.E.2d 1161, 1163-64 (1979).

approximately three months before service was undertaken. The plaintiff nailed and mailed at and to a location which was both the last known residence and last known place of business of the defendant. Even though the court concluded that the plaintiff had made diligent efforts to effect personal service, the process was quashed. Quoting the practice commentary to N.Y. Civ. Prac. Law § 308 at 113 (McKinney Supp. 1966), the court said:

> "The statute permits the summons to be mailed to the defendant's 'last known' residence, but it has no corresponding 'last known' provision in the affixation or delivery segment. In short, while the mailing may be made to the defendant's last known residence, the delivery must be made to a place where the defendant in fact works or dwells." [*Id.* at 228, 278 N.Y.S.2d at 20-21.]

And *see Chalk v. Catholic Medical Center, Inc.,* 58 A.D.2d 822, 396 N.Y.S.2d 864 (mem. 1977); *Polansky v. Paugh,* 23 A.D.2d 643, 256 N.Y.S.2d 961 (1965) (whereabouts of defendant unknown but substituted service at former residence insufficient); *Zelnick v. Bartlik,* 46 Misc. 2d 1043, 261 N.Y.S.2d 573 (1965) (service on defendant's estranged wife at defendant's former residence insufficient); *Jauk v. Mello,* 45 Misc. 2d 307, 256 N.Y.S.2d 412 (1964) (nailing at premises where process server advised defendant was no longer residing is insufficient).

By 1970 N.Y. Laws, Ch. 852, CPLR 308 was repealed and reenacted. The leave and mail mode was made an alternative form of personal service in new subsection 2 while the nail and mail mode remained a form of substituted service in new subsection 4. In both subsections the word "actual" was added immediately preceding "place of business, dwelling place or usual place of abode." In its amended form the statute was before the Court of Appeals of New York in *Feinstein v. Bergner,* 48 N.Y.2d 234, 422 N.Y.S.2d 356, 397 N.E.2d 1161 (1979). The last known residence of the defendant, that of his parents, had been used for both nailing and

mailing. In fact the defendant had established his own household in the same county some 18 months before the attempted service. The plaintiff in that case, as does the Plaintiff here, contended that using the last known residence for both of the notice elements satisfied the statute. It was held that the service was ineffective because the defendant was no longer living at the place of nailing, even though actual notice was effected as a result of the defendant's father's forwarding of the papers. Speaking of the time when CPLR 308 did not contain the word "actual," the court said:

> While there may be some question as to whether there is a distinction between "dwelling place" and "usual place of abode", there has never been any serious doubt that neither term may be equated with the "last known residence" of the defendant. [*Id.* at 239, 422 N.Y.S.2d at 358, 397 N.E.2d at 1163 (citations and footnotes omitted).]

The New York court refused to "blur the distinction between 'dwelling place' and 'last known residence' " because "to do so would be to diminish the likelihood that actual notice will be received by potential defendants." *Id.* at 240, 422 N.Y.S.2d at 359, 397 N.E.2d at 1164. On the question of general construction of the statute the court recognized that where the defendant's residence is known the place of mailing and the place of leaving or nailing would be the same location. Viewing the statute in its entirety the court said "it becomes clear that the Legislature deliberately used the term 'last known residence' as a means of encompassing cases where only the actual place of business is known as well as cases where the defendant's current residence is known." *Id.* at 241, 422 N.Y.S.2d at 359, 397 N.E.2d at 1164 (footnote omitted).

In the case at bar we need not opine how MD. R. 104 h 1, as incorporated into MD. R. 107 a 3, might be interpreted or applied in other fact situations. It is clear that the delivery

element of the rule is intended to serve, to some degree, a notice giving function. But the record in this case affirmatively reflects that the place at which delivery was made is a place at which the Defendant no longer lives, and there is no evidence to indicate that the Defendant had any connection in fact with that place at the time process was delivered there to a person of suitable age and discretion. The requirements set forth in MD. R. 104 h 1 are not satisfied by delivery at a place then having no relationship to the person to be notified other than as the last address known to the Plaintiff as a previous residence of the Defendant. In short, MD. R. 107 a 3, which was drafted when the long arm came to Maryland and which is perhaps conservatively circumscribed, does not, under the facts of the case at bar, authorize the method of service utilized here.[4]

Because a prescribed method of service was not complied with, the court below did not acquire *in personam* jurisdiction over the Defendant. *See Miles v. Hamilton,* 269 Md. 708, 309 A.2d 631 (1973); *Sheehy v. Sheehy,* 250 Md. 181, 242 A.2d 153 (1968); *North v. Town Real Estate Corp.,* 191 Md. 212, 60 A.2d 665 (1948); *Oland v. Agricultural Insurance Co., supra; Guen v. Guen,* 38 Md. App. 578, 381 A.2d 721 (1978). And *see Parish v. Maryland and Virginia Milk Producers Ass'n,* 437 F. Supp. 623 (D. Md. 1977) and *Free State Receivables, Ltd. v. Claims Processing Corp.,* 76 F.R.D. 85

---

4. The problem of the motor vehicle accident plaintiff who seeks to serve an insured defendant whose whereabouts are unknown has been addressed in other states by the use of a rule or statute for which there is no Maryland counterpart. In some of our sister states, after the usual methods of service have been unsuccessful, a court is authorized to fashion by order a method of service which is tailor made to the circumstances of the case. *See, e.g.,* CPLR 308 (subs. 4) (McKinney 1963), set forth above. There is authority for the proposition that, under appropriate circumstances, an order permitting process for the defendant to be served on his insurer complies with due process. *See* Krueger v. Williams, 410 Mich. 144, 300 N.W.2d 910, 17 A.L.R.4th 902, *appeal dismissed,* 452 U.S. 956, 101 S. Ct. 3102, 69 L. Ed. 2d 967 (1981); Dobkin v. Chapman, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451 (1968); and Annot., 17 A.L.R.4th 918 (1982).

(D. Md. 1977). Accordingly there was no error in quashing service in this case.

> *Judgment of the Circuit Court for Baltimore City affirmed.*
> *Costs to be paid by the appellant, Barbara Mooring.*