581 A.2d 36

**CLEARAIL, INC.**

v.

**MARDIROSSIAN FAMILY ENTERPRISES.**

No. 808, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 30, 1990.

**498**

Steven R. Silberman (Tomas A. Baker, Maryland, on the brief), Baltimore, for appellant.

James Brault (Brault, Graham, Scott & Brault, on the brief), Rockville, for appellee.

Argued before WILNER, BISHOP, ROBERT M. BELL, JJ.

BISHOP, Judge.

Clearail, Inc. ("Clearail") appeals the dismissal by the Circuit Court for Montgomery County of its petition to establish and enforce a mechanics' lien on property of appellee, Mardirossian Family Enterprises ("MFE"), a general partnership. The court found that appellant had not complied with the notice requirements of Md.Real Property

Code Ann. § 9–104. Since this case is proceeding under the expedited appeal procedures of Maryland Rule 8–207, the parties have filed an agreed statement of the case and essential facts.

## ISSUE

The issue is whether appellant's written notice of intention to claim a mechanics' lien, sent within the statutory period by certified mail, return receipt requested, but not received by appellee until served by personal service after the statutory period, satisfies the requirements of Md.Real Property Code Ann. § 9–104.

## FACTS

The following is the agreed statement:

Pursuant to a subcontract with a general contractor, Clearail, Inc. ("Clearail") supplied labor and materials for the installation of clear glass block railings during construction of an office building at 18757 North Frederick Road, Gaithersburg, Montgomery County, Maryland. The owner of the property was Mardirossian Family Enterprises ("MFE"), a general partnership.

In a petition to establish and enforce a mechanics' lien filed in the Circuit Court for Montgomery County, Clearail alleged that it supplied the labor and materials from April 20, 1989 through July 19, 1989. MFE filed an answer to the petition denying, among other things, that Clearail gave timely notice of its intention to claim a lien under Md.Real Property Code Ann. § 9–104.

A hearing was held on March 7, 1990. At the hearing, Clearail's attorney proffered that within 90 days of July 19, 1989, he mailed two notices dated October 5, 1989 of Clearail's intention to claim a mechanics' lien by certified mail, return receipt requested, to MFE at the property address and to MFE's previous office address. The certified mail receipts were postmarked October 12, 1989. Both of the notices were returned with the envelopes

unopened to Clearail's attorney, and were marked by the U.S. Postal Service as "unclaimed". On the post office receipts attached to the envelopes were the following notations:

Date

*10/14*

1st Notice

*10/20*

2nd Notice

*10/30*

Return [1]

After the unclaimed notices were returned to him, Clearail's attorney engaged a private process server to serve the notice personally on a partner in MFE. On December 11, 1989, more than 140 days after Clearail stopped its work, the process server personally delivered the notice to Aris Mardirossian, a general partner in MFE.

It was undisputed that Clearail did not post a notice of intent to claim a lien on the building. It was also undisputed that MFE did not receive Clearail's notice of intention to claim a lien until December 11, 1989, when a copy of the notice was personally served on Aris Mardirossian.

Based upon the above facts, the Circuit Court for Montgomery County dismissed Clearail's petition on the ground that Clearail had not complied with the notice requirements of § 9–104. Clearail appeals from the dismissal of its petition.

## DISCUSSION

### A.

### *Mechanics' Liens in Maryland*

In 1791 Maryland was the first state to enact a mechanics' lien statute. 1791 Md.Laws, Ch. 45, § 10. This statute

---

1. The 90th day was October 17, 1989.

was enacted to protect workers engaged in the construction of the nation's capital.[2] In 1838 a mechanics' lien statute was enacted for Baltimore City and gradually the remedy was extended to other jurisdictions within the State. 1838 Md.Laws, Ch. 205. *See also,* 36 Md.L.Rev. 733,736 (1977). Although mechanics' liens were unknown at common law [3], they exist "by virtue of a Damoclean statutory remedy within the precise ambit of which [a] claimant must place himself." *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.,* 274 Md. 307, 313, 334 A.2d 526 (1975) (citations omitted). This statutory remedy functioned in approximately the same fashion for nearly two hundred years, until the Maryland Court of Appeals decided *Barry Properties, Inc. v. Fick Brothers Roofing Co.,* 277 Md. 15, 353 A.2d 222 (1976).

The *Barry* case involved a mechanics' lien obtained by Fick Brothers Roofing Co. ("Fick"), a subcontractor, on a building owned by Barry Properties, Inc. ("Barry"). Although Fick complied in all respects with the mechanics' lien procedure then in force, Barry argued that the lien statute was incompatible with the due process clauses of Article 23 of the Maryland Declaration of Rights [4] and the

---

**2.** For a thorough discussion of the historical background of mechanics' liens see, Brief of Amici Curiae at 2–11, *Barry Properties, Inc. v. Fick Brothers Roofing Co.,* 277 Md. 15, 353 A.2d 222 (1976).

**3.** "The concept [of mechanics' liens] had been in use in the major civil law countries and it has been suggested that Thomas Jefferson learned of the remedy as he studied major European cities in connection with the planning of the capital." 36 Md.L.Rev. 733, 735 (1977).

**4.** At the time the *Barry* case was decided, Article 23 provided, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land." Amendments to portions of the Maryland Declaration of Rights were ratified in 1978 and, as a result, the above quoted provision is currently found in Article 24. *See,* Chapter 681, Acts of 1977, ratified Nov. 7, 1978.

Fourteenth Amendment of the United States Constitution [5] because it unconstitutionally deprived Barry of its property without procedural due process of law.

The Court preliminarily determined that "mechanics' liens involve state action since they are created, regulated and enforced by the State." *Barry, supra,* at 22, 353 A.2d 222 (citations omitted). After examining four analogous Supreme Court decisions involving prejudgment creditor remedies [6], the Court concluded that the imposition of a mechanics' lien deprived an owner of a significant property interest without due process of law and, therefore, the Maryland statute was unconstitutional. The Court refrained from striking down the entire act, however, finding that the act's provisions were severable. Instead, the Court resolved the constitutional problems by excising certain portions of the statute.

As a result of the *Barry* case the General Assembly passed emergency legislation to correct the constitutional defects found by the Court. Senate Bill 998 [7] repealed and reenacted with amendments sections 9–101 through 9–113 of the Real Property Article of the Annotated Code and provided owners of real property with notice and an opportunity for a hearing prior to subjecting their property to a mechanics' lien. Section 9–104 currently provides in part:

§ 9–104. Notice to owner by subcontractor.

(a) *Notice required to entitle subcontractor to lien.—* (1) A subcontractor doing work or furnishing materials or

---

**5.** The Fourteenth Amendment provides in part: "... nor shall any State deprive any person of life, liberty or property, without due process of law;".

**6.** *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment of bank account); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration of personalty pursuant to vendor's lien); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin of personalty); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages).

**7.** *See,* 1976 Md.Laws ch. 349.

both for or about a building other than a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle unless, within 90 days after doing the work or furnishing the materials, the subcontractor gives written notice of an intention to claim a lien substantially in the form specified in subsection (b) of this section.

*     *     *     *     *     *

(c) *Notice by mail or personal delivery.*—The notice is effective if given by registered or certified mail, return receipt requested, or personally delivered to the owner by the claimant or his agent.

*     *     *     *     *     *

(e) *Notice by posting.*—If notice cannot be given on account of absence or other causes, the subcontractor, or his agent, in the presence of a competent witness and within 90 days, may place the notice on the door or other front part of the building. Notice by posting according to this subsection is sufficient in all cases where the owner of the property has died and his successors in title do not appear on the public records of the county.

(f) *Payments by owner to contractor after notice; limitation on lien against certain single family dwellings.*—(1) On receipt of notice given under this section, the owner may withhold, from sums due the contractor, the amount the owner ascertains to be due the subcontractor giving the notice.

(2) If the subcontractor giving notice establishes a lien in accordance with this subtitle, the contractor shall receive only the difference between the amount due him and that due the subcontractor giving the notice.

## B.

### *Notice*

The general purpose of the mechanics' lien statute is to protect labor and material suppliers in the construction industry. *Riley v. Abrams,* 287 Md. 348, 357, 412 A.2d 996

(1980). The notice provided by § 9–104, however, is required for the protection of the property owner because of the significant property interest that is at stake. *Barry, supra,* 277 Md. at 36–37, 353 A.2d 222. The notice required by § 9–104 informs the property owner of the nature and amount of the claim intended to be fixed as a lien upon his property and allows him an opportunity to retain in his hands, out of the money payable to the general contractor, the amount claimed by the subcontractor. *District Heights Apts. v. Noland Co.,* 202 Md. 43, 51, 95 A.2d 90 (1952). This sum of money may then be applied by the owner to the payment of the lien which may be filed against his property.[8]

Section 9–104 clearly indicates several methods by which subcontractors may effectively give notice of intention to claim a lien. Pursuant to § 9–104(c), subcontractors have the option of using certified mail. During passage, Amendment 19 to Senate Bill 998 gave subcontractors the option of using registered mail as well. According to a note accompanying Senate Amendment 19, the purpose of the amendment was to allow subcontractors "to use registered mail instead of certified mail to obtain better evidence of compliance with the notice requirements." It should be noted that § 9–104(c) does not specify that notice must be given *only* by registered or certified mail, or whether notice would be effective if actually received albeit by regular mail. It is possible that there would be compliance if the notice were sent by regular mail. "In such a case, the notice, to be sufficient, must be reasonably certain to apprise those affected." 58 Am.Jur.2d *Notice* § 28 (1989). The burden of proving actual receipt, therefore, rests squarely on the sender. *Compare, Border v. Grooms,* 267 Md. 100, 297 A.2d 81 (1972); *Compania de Astral, S.A. v.*

---

**8.** *See,* Md.Real Property Code Ann. § 9–104(f)(1) which provides: "On receipt of notice given under this section, the owner may withhold, from sums due the contractor, the amount the owner ascertains to be due the subcontractor giving the notice." *See also, Himelfarb v. B & M Welding & Iron Works,* 254 Md. 37, 253 A.2d 842 (1969).

*Boston Metals Company,* 205 Md. 237, 107 A.2d 357 (1953). Subcontractors also have the option of personally delivering notice to an owner or his agent pursuant to § 9–104(c). If notice cannot be given on account of absence or other causes, subcontractors may give notice by posting pursuant to § 9–104(e).

Although the lien statute clearly permits a variety of methods for delivery of notice, the issue of timeliness is less clear. The statute provides that subcontractors must give notice of intention to claim a lien within 90 days after doing the work or furnishing the materials. In *Riley, supra,* the Court of Appeals addressed the issue of whether notice of intention to claim a mechanics' lien mailed within the 90 day statutory period, but received beyond the 90 day period, was effective. The *Riley* case involved a subcontractor who, on the 85th day after doing work or furnishing materials, mailed notice to an owner by certified mail, return receipt requested. The notice was in fact received on the 92nd day. The Court held that because the object of the mechanics' lien law is to protect those who furnish labor and materials in construction, "registered mail notice under § 9–104, sent within 90 days and received thereafter, is effective." *Id.* 287 Md. at 357, 412 A.2d 996 (Emphasis added).

As a result of this holding, an owner who does not receive notice within the statutory period will be placed in a position, for some period of time, of not knowing whether he may pay a contractor without fear of being bound by demands of subcontractors, mailed earlier but received after the statutory period.[9] Presumably, this period of uncertainty will be brief since the notice must be mailed, at the latest, on the last day of the statutory period. It is important to note, however, that the Court in *Riley* expressly

---

**9.** It should be noted that the owner's risk of paying the general contractor after the statutory period, but before receiving notice of a subcontractor's lien, can be avoided by obtaining a release of all liens from the subcontractors before paying the general contractor.

declined to rule on the effectiveness of a subcontractor's notice, mailed within the statutory period but *not* received. In *Riley* the Court concluded: "Since the notice from the Subcontractor in this case was received by Owner, we do not reach the interpretation of Real Property Article, § 9–104 if it were found as a fact that the Subcontractor's notice was mailed within the statutory period but was *not* received." *Id.* at 357, 412 A.2d 996 (emphasis in original).

It should also be noted that in *Riley* the registered mail notice was sent within the 90 day period and it was the specific document that had been mailed which was received shortly thereafter. In the case *sub judice*, the specific document that was mailed by the subcontractor was not received by the owner as a result of that mailing but rather the document, presumably the same one that was mailed, was later personally served on the owner. There was a break in the continuity between the mailing and the actual delivery of the document. The distinctions between *Riley* and the case *sub judice* are that the actual delivery in *Riley* occurred within two days of the end of the ninety day period and the delivery resulted from the original mailing and in the case now before us, the actual service arrived fifty days after the statutory period or 140 days after completion of the work. We presume from what followed that, on or about October 30th, the sub-contractor was notified of the "unclaimed" status. He did not, however, effect actual service until December 11th, 44 days later.

In deciding *Riley* the Court examined *Montgomery County v. Glassman,* 245 Md. 192, 225 A.2d 448 (1967), which involved a payment bond statute. Although *Glassman* was decided in 1967, prior to the *Barry* case, the bond statute involved was similar to Maryland's current mechanics' lien statute. Its purpose was to protect subcontractors and materialmen on State or other public projects where they have no lien on the work done or material provided. *Id.* at 201, 225 A.2d 448. Comparable to the mechanics' lien statute, the claimant was required to come within the plain

meaning and obvious purpose of the statute. *Id.* (citations omitted).

The *Glassman* case involved a subcontractor on a school construction project who sent notice to the contractor by certified mail, return receipt requested, on either Friday or Saturday, the 89th or 90th day. The notice was received on the following Monday, the 91st day. The bond statute provided that a claimant must give " 'written notice to the contractor within 90 days from the date' the last of the labor was performed or the last of the material furnished or supplied." [10] *Id.* The statute did not specifically provide that the contractor must receive the notice within the 90 day period, but it did require that notice be served by either registered or certified mail, postage prepaid. *Id.* Not only was ordinary mail insufficient under this statute, but the Court in *Glassman* found that "[t]he Legislature ha[d] eliminated claims of alleged oral notice as fulfilling the 90 day requirement and ha[d] provided, in effect, that receipt of the written notice by the contractor [was] essential to prove the mailing." *Id.* at 202, 225 A.2d 448. Noting that the statute was to be liberally construed, the Court held that mailing of the notice within the 90 day period, in the manner prescribed, was sufficient, although it was received on the 91st day. Also, it should be noted that the 90th day in *Glassman* fell on Saturday, October 26th. The notice had been mailed on Friday, October 25th and was received on Monday, October 28th, hardly a great discrepancy with the notice requirements. The *Glassman* Court observed:

We regard it as significant in the question of statutory construction that the manner in which the notice is to be mailed is carefully set forth. Not only must postage be prepaid, but ordinary mail is not sufficient; the notice must be sent by registered or certified mail. The Legislature has eliminated claims of alleged oral notice as fulfill-

---

**10.** Section 9–104(a)(1) provides that the subcontractor is not entitled to the lien "unless, within 90 days after doing the work or furnishing the materials [he] gives written notice of" his intention to file a claim.

ing the 90 day requirement *and has provided, in effect, that receipt of the written notice by the contractor is essential to prove the mailing.*

*Id.* at 202, 225 A.2d 448 (emphasis added).

In *Wheeler v. Unsatisfied Claim and Judgment Fund,* 259 Md. 232, 269 A.2d 593 (1970), the Court interpreted *Glassman* clearly to connote the need for receipt of notice at some time. *Id.* at 238, 269 A.2d 593. The *Wheeler* case involved Code, Art. 66½, Sec. 154(a) (1967 Repl.Vol.) [11] which required claimants to apply for payment from the Unsatisfied Claim and Judgment Fund within 180 days after an accident or within 30 days of receiving a disclaimer of liability from the insurer of the person who caused him to suffer damages. *Wheeler, supra,* at 233, 269 A.2d 593. The claimants argued that they mailed proper notice to the Board and the Board countered that it never received the notice. The Court stated that:

Indeed we find nothing in *Glassman* which might suggest that we ever considered, directly or indirectly, the concept that receipt of the notice was either unnecessary or unimportant. We have found no case so holding nor has any such case been brought to our attention.

*Id.* at 238, 269 A.2d 593. Consequently, the Court upheld the trial court's denial of claimant's application because the claimant's evidence of mailing was insufficient to raise a presumption that the Fund received the notice.

That actual receipt of the notice at some time was contemplated by the Maryland Legislature is also demonstrated by Md.Real Property Code Ann. § 9–104(f)(1) which provides:

(1) *On receipt of notice* given under this section, the owner may withhold, from sums due the contractor, the amount the owner ascertains to be due the subcontractor giving the notice. (emphasis added).

---

**11.** Article 66½ was repealed by Acts 1977, ch. 14, § 1, effective July 1, 1977.

Accordingly, absent actual receipt of notice an owner may be placed in the unfavorable position of not knowing the basis for or the amount of the lien claimed. Furthermore, an owner can not avail himself of the statutory protection unless he knows of a subcontractor's intent to claim a mechanics' lien and this will occur only upon actual delivery of notice.[12]

■ It is clearly established that, in light of the liberal construction given Maryland's mechanics' lien statute, the burden on property owners of receiving notice a number of days beyond the statutory period is not onerous and does not justify a rule requiring receipt within the statutory period. *Riley, supra,* 287 Md. at 354, 412 A.2d 996; *Glassman, supra,* 245 Md. at 204, 225 A.2d 448. It is significant, however, that in both *Riley* and *Glassman* notice was actually sent and received within two days and one day, respectively, after the statutory deadline. As this post-deadline time accrues, the burden on property owners increases and it becomes important to consider due process limitations because, while the notice requirement imposes no hardship upon the claimants, it does give the property owner a means of protection which the Legislature intended for his benefit. *District Heights Apts., supra,* 202 Md. at 51, 95 A.2d 90. Although it is not necessary for this Court to establish a bright line test, it is clear that a subcontractor's notice of intention to claim a mechanics' lien must be sent within the statutory period and received within a reasonable time thereafter.

---

12. *Cf.* Md.Rule 2–121 which deals with service of process and provides that "Service by certified mail under this Rule is complete upon delivery." The delivery element of this Rule is intended to serve, to some degree, a notice-giving function similar to that required by § 9–104. *Mooring v. Kaufman,* 297 Md. 342, 466 A.2d 872 (1983). Courts will examine whether service given under Rule 2–121 afforded defendant due process of law. *Jardine, Gill & Duffus, Inc. v. M/V Cassiopeia,* 523 F.Supp. 1076 (D.Md.1981). Similarly, liens imposed under Maryland's mechanics' lien statute must afford owners due process of law because of the significant property interest at stake. *Barry, supra.*

## C.

### Adequacy of Clearail's Notice

In the case *sub judice*, Clearail, a subcontractor, mailed notice to MFE, the property owner, by certified mail, return receipt requested, within the statutory period. This notice, however, was never received by appellee. Clearail contends that because MFE prevented the imposition of the lien by failing to pick up the notice from the post office, Clearail's subsequent use of personal service satisfied the requirements of § 9–104.

It is well settled that there must be at least substantial compliance with the requirement of timely notice of intention. *Bukowitz v. Maryland Lumber Company*, 210 Md. 148, 122 A.2d 486 (1956). In *Bukowitz*, a subcontractor argued that because notice, sent by registered mail, was returned marked "refused", an inference arose that the addressee declined to receive it, knowing what it contained. *Id.* at 154, 122 A.2d 486. The Court found this inference impermissible because the notice might have been "refused" by another family member, an employee or some other person. Consequently, such an inference is not permitted unless there is some evidence that the addressee learned of the contents and refused to accept the mailing in order to avoid imposition of a lien.

In the instant case, as in *Bukowitz*, the certified mailings might have been "refused" by an employee or some other person. The notice might also have gone unclaimed for any number of reasons including vacation, illness or absence from the premises for some other legitimate reason. The facts do not indicate that MFE learned of the contents of the certified letters or purposely failed to pick up the letters from the post office in order to avoid imposition of the lien.

On the contrary, the facts indicate that Clearail did not act diligently and take reasonable steps to ensure that timely notice was given. An action to establish a mechanics' lien is equitable in nature and, consequently, the maxim that equity aids the vigilant applies. Md.Rule BG71(a). In

October 1989 Clearail had the option of personally delivering notice to MFE, but Clearail chose instead to send the notice by certified mail five days before the expiration of the notice period. Clearail could have contacted the post office to ascertain whether delivery was made so that, if necessary, personal delivery could be made on or before the 90th day. Clearail might also have given notice by posting pursuant to § 9–104(e), but again, this option was not employed. Instead, after the certified letters were returned undelivered, on or about October 30, 1989, appellant made no attempts to deliver notice until December 11, 1989 when notice was personally delivered. The resulting problem is the lengthy period between the postal services' notification to the sub-contractor that the certified mail was unclaimed and the date when notice was personally delivered. We believe that it was the intent of the legislature, not only to protect the sub-contractor by the efficient and timely imposition of the lien, but also to provide some assurance that the owner would not be placed in the position of having to pay twice for the same work.[13]

If the owner, who has not received actual notice of the existence of the lien, the notice having been mailed in compliance with the statute and the postal authorities having attempted to make delivery, makes payment, in good faith, to the contractor between the 90th day and the date on which *actual* notice of the lien is received, the owner should not be liable to the sub-contractor to the extent of that payment. We do not believe that the legislature ever intended that the mailing of the notice and a subsequent unsuccessful attempt by the post office to deliver it would place the sub-contractor in the position that, at any time thereafter, merely by making actual service on the owner,

---

**13.** Indeed, this situation could occur if we were to hold that the lien attaches in totality, regardless of whether and when actual notice is received. If we were to strictly interpret the statute that interim period could be indefinite—one year, two years, three years.... *Cf. D & Y, Inc. v. Winston,* 320 Md. 534, 538–539, 578 A.2d 1177 (Md.Ct. Spec.App.1990).

the lien would be totally effective against an innocent property owner, who, without actual notice, made payments in the interim to the contractor. It is clear from our discussion *supra* that it was the intent of the post-*Barry* legislation to provide due process to the owner—not to create a situation where the innocent property owner, without actual notice, would be subject, for an indefinite period, to the actions of the sub-contractor.

Once the notice is given within 90 days, in accordance with the registered or certified mail authority and requirements in § 9–104(c), a lien exists on the subject property from the time of the notice from the postal authorities to the property owner, whether delivery is completed by actual notice or by notification to the address of the owner of the existence of the registered or certified mail containing the notice. There should be some limitation, however, on the coverage afforded under the lien where there is no actual notice.

█ The legislature attempted to provide a balance. On the one hand, it permitted the sub-contractor to fulfill the notice requirement by registered or certified mail. At the same time, it authorized the owner, upon receipt of such notice to withhold from the sum owed the contractor the amount due the sub-contractor. Once the sub-contractor complies with the registered or certified mail requirement he is entitled to a lien and the owner is authorized to withhold the funds from the contractor. If, as in the case *sub judice,* the sub-contractor is notified that the registered or certified mailing containing the notice is unclaimed, he is on notice that the owner has not received actual notice of the lien. Under those conditions, the lien comes into existence but the extent of the coverage of the lien depends upon the diligence of the sub-contractor in perfecting actual service. Until actual service, the property owner is protected to the extent that he acts in good faith, in that he does not attempt to frustrate the claim of the sub-contractor by willfully acting to avoid receiving the notice. Whether the

property owner acted in good faith is a factual matter to be determined by the fact finder.

It will be necessary for the trial court to determine certain facts which are not contained in the record before us. These include: whether the appellee acted in good faith vis-a-vis the certified mail; whether any payments were made during the interim between the 90th day and the receipt of actual notice; the date on which appellant was advised of non-delivery; what actions appellant took to effect delivery; and any other facts that may be necessary to be developed based on the proceedings required by this opinion.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEE.